No. 45,342

Leonard L. Jacks, *Appellee,* v. Roy Cloughley, Charles Glenn, Don Dowdall and Paul Hancock, *Appellants,* and Hayden Wylie, *Defendant.*

(457 P. 2d 175)

Opinion filed July 17, 1969.

*Charles W. Thompson,* of Kansas City, argued the cause and was on the brief for the appellants.

*John Fields,* of Kansas City, argued the cause, and *David W. Carson, John K. Dear, Ernest N. Yarnevich, John William Mahoney* and *Joseph T. Carey,* all of Kansas City, were with him on the brief for the appellee.

The opinion of the court was delivered by

Schroeder, J.: This is an action for assault and battery brought by the plaintiff against the defendants, members of the Wyandotte township volunteer fire department, seeking actual damages in the amount of $100,000 and punitive damages in the amount of $100,000 as the result of an alleged assault occurring while the defendants were putting out a fire on the plaintiff's property.

The case was tried to a jury which returned a verdict against four

of the named defendants (appellants), assessing damages against each of them in the sum of $2,500 actual damages and $2,500 punitive damages. Appeal has been duly perfected.

The appellants specify trial errors primarily pertaining to the admission of evidence.

The evidence in this case was conflicting, but since the jury found in favor of the plaintiff, we shall state the facts in the light most favorable to the plaintiff.

Leonard Jacks (plaintiff-appellee) at the time of the incident in question weighed 160 pounds and stood about 5 feet 8 inches tall. On the 7th day of April, 1963, he was severely beaten by Roy Cloughley, Charles Glenn, Don Dowdall and Paul Hancock (defendants-appellants). All of the defendants, including Hayden Wylie, were volunteer members of the Wyandotte township fire department.

Approximately one week prior to April 7, 1963, the Wyandotte township fire department had been called to put out a fire that had originated from a trash burner in a nearby residential area. The fire had spread across the appellee's property onto another neighbor's land, that of Robert Carr. A few days thereafter the appellee went to the fire station and explained to Mr. Cloughley that he was cleaning his field and would appreciate it if the fire department would not interfere with his burning of the trash. The appellee testified: "They told me that it would be, 'no problem'."

Shortly after the first fire and sometime prior to April 7, 1963, the perimeter of the appellee's property in question had been plowed.

On the morning of April 7, the appellee had set fire to brush piles on his property. Shortly thereafter Mrs. Robert Carr called the Wyandotte township fire department to the scene. The appellee was some distance from the point where the fire truck pulled onto his property and commenced putting out the fire. At that time the appellee was talking to a neighbor, Floyd McCord, at the fence line. Upon seeing the firemen engage in putting out the fire, the appellee with a pitchfork in hand headed for the fire truck, but before reaching the truck he threw the pitchfork to the ground. When the appellee reached the truck he saw Mr. Cloughley was the driver and he said: "Roy, I don't want this fire put out; I thought I had that explained to you, that I would like to clean up this field." According to the appellee Cloughley said: "I will come in your field, and do any damned thing I want to, any time I want to."

According to the appellee Cloughley was standing and sitting at the same time, holding the door of the truck open, when he kicked at the appellee who in turn reached up and grabbed Cloughley by the shirt, which was torn. Cloughley came out of the truck onto Jacks where an affray ensued on the ground, joined in by the other appellants.

In an effort to defend himself the appellee got ahold of a fire extinguisher on the truck which he endeavored to use. In the affray the appellee was kicked about the body and head, strangled, and his body used as a battering ram, running his head into the side of the fire truck four times.

The appellee's brother, Ed Jacks, then arrived at the scene and assisted the appellee to the hospital.

Dr. Jack Cooper, who specialized in the field of neurosurgery, testified he saw the appellee at Providence Hospital on April 7; that the appellee had clotted blood in his hair, both eyes were swollen and contused, grossly; the left side of his face was swollen and bruised; there were multiple small abrasions where the skin had been brushed away; there were no large lacerations or tissue breaks that would require sutures, but there was clotted blood about both ears and in particular the right ear; the patient was unable to get out of bed due to severe pain in the chest; he was short of breath and coughed readily and easily with a great deal of pain; there was considerable abdominal tenderness and there were marks on his body that presented a configuration of heel marks. X-rays revealed a fracture of the tenth rib, and three doctors, each in a particular field of speciality, consulted with each other in working on the appellee as a patient.

The appellee was released from the hospital on the 21st day of April, 1963, and Dr. Cooper saw him on three occasions thereafter, the last being July 12, 1963. During the subsequent visits the appellee was extremely nervous, complained of headaches and pain in his back. He also complained of pain down the right leg and over the sciatic nerve to a point below the knee. He complained of dizziness, and the doctor noticed he had some flattening of the normal lumbar curve. On July 12, 1963, he continued to limp and he experienced pain in his leg.

The appellee's employer testified when the appellee went back to work on September 9, 1963, the appellee was not nearly the man he used to be prior to the occurrence.

One of the appellants, Charles Glenn, engaged in the affray, was a constable for Wyandotte township, and a leather blackjack or slap stick was noticed in his right hand immediately after the affray had stopped.

During the affray the fire on the appellee's property had burned itself out.

The jury found in favor of one defendant, Hayden Wylie, and against the other defendants, Cloughley, Glenn, Dowdall and Hancock, as heretofore stated.

No question is raised in this case concerning the right of members of a fire department to enter upon private property in the discharge of their duties to put out fire. By statute actual members of a township fire department are vested with police power to prohibit persons from interfering with firemen in the discharge of their duties. (K. S. A. 80-1907; and see K. S. A. 80-1519.) For general authority on the subject see 65 C. J. S., Negligence, § 63 (110), p. 861.

The record does not indicate that the firemen in question were exercising a right on their part to arrest; however, it is indicated by the instructions, concerning which no complaint is made, they were defending the assault and battery charge on the ground they were acting in self defense or in the defense of another.

Our review on appeal will be confined to the points raised by the appellants and argued in their brief.

The appellants contend the trial court erred in permitting the appellee to call a rebuttal witness, over the appellants' objection, and offer testimony that should have been introduced in the appellee's case in chief.

Edward Jacks, a brother of the appellee, was permitted by the trial court to testify in rebuttal concerning the condition of the appellee at the time he first saw him. He testified about the "blood and dirt" all over his brother, and that he brushed two fellows in the circle surrounding his brother aside and went in, put his arms around him and took him out. He said he did not stay and talk to any of the appellants at the scene.

The appellants made a point in examining their witnesses that Edward Jacks, when he arrived at the scene, carried on a conversation with several of the appellants, and that the appellee left the scene of the affray under his own power.

After the appellants' evidence was in, it appeared that a conflict existed in the evidence as to whether the appellee was in sufficient

condition to leave the scene under his own power. Another brother of the appellee, Horace Jacks, testified on direct examination that Edward was holding the appellee up when he, Horace, went to the field where the affray occurred.

Edward Jacks had not previously been called as a witness by the appellee in the trial of the case; therefore, counsel for the appellee called Edward Jacks as a rebuttal witness.

The appellants argue the so-called rebuttal witness did not testify concerning any matters to rebut the appellants' evidence; but that the appellee was allowed to reiterate and emphasize to the jury the physical condition of the appellee by way of this so-called rebuttal witness. It is argued this, being the last evidence heard by the jury, created a lasting image in the minds of the jury and thereby prejudiced the appellants in the trial of this action.

A trial judge is vested with considerable discretion in the matter of receiving rebuttal testimony. (*Bennett v. LaDoux*, 194 Kan. 216, 398 P. 2d 590; and *State v. Neff*, 169 Kan. 116, 218 P. 2d 248.) The ruling of the trial court will not be ground for reversal unless it appears that the discretion has been abused to the appellants' prejudice. (*State, ex rel., v. Stout*, 101 Kan. 600, 168 Pac. 853; and see K. S. A. 60-261.)

In 29 Am. Jur. 2d, Evidence, § 250, it is said:

". . . Rebutting evidence is that which is given to explain, repel, counteract, or disprove testimony or facts introduced by or on behalf of the adverse party. Such evidence includes not merely evidence which contradicts the witnesses on the opposite side and corroborates those of the party who began, but also, evidence in denial of any affirmative fact which the answering party has endeavored to prove." (pp. 298, 299.)

Examples of proper rebuttal testimony similar to that received in the instant case may be found in *Canfield v. Oberzan*, 196 Kan. 107, 117, 410 P. 2d 339; and *Brothers v. Adams*, 152 Kan. 675, 688, 107 P. 2d 757.

It can hardly be said the appellants were prejudiced by the testimony of Edward Jacks that the appellee was covered all over with blood and dirt. On direct examination in the appellee's case in chief the doctor testified as heretofore indicated. The testimony of his brother, Horace, described the appellee as "He had no face." His wife testified, "When I first saw him, I was shocked." James P. Riggs testified, "and he looked like he had been through a thrashing machine." Donald Woolery testified he was "all beat up and bloody."

The testimony of Edward Jacks was proper rebuttal evidence and the trial court did not err in permitting him to testify.

The appellants contend the trial court erred in permitting the appellee to introduce, over their objection, certain exhibits which were not introduced at the pretrial conference.

Complaint is made of numerous exhibits which the trial court admitted in evidence, some of which were photographs.

The record discloses that a pretrial conference was ordered and conducted by the trial court, but the record does not disclose that a pretrial order was ever entered or journalized. As a result counsel for the respective parties in their briefs base their argument upon matters which do not appear in the record.

None of the exhibits concerning which complaint is made has been set forth in the record presented on appeal.

Actually, whether the exhibits in controversy were ever presented or considered by the trial court at the pretrial conference is immaterial. Absent a pretrial order controlling the introduction of such exhibits, we cannot say the trial court abused the exercise of its power of discretion in admitting the exhibits concerning which complaint is made.

Cases upon which the appellants rely (*Brown v. Hardin*, 197 Kan. 517, 419 P. 2d 912; and *Connell v. State Highway Commission*, 192 Kan. 371, 388 P. 2d 637) setting forth the purpose of the pretrial conference, do not support the appellants' contention that the exhibits here in question were not admissible in evidence.

In *Brown v. Hardin*, supra, the court said:

". . . The matters specifically mentioned in the pretrial statute are not exclusive. Many courts have come to require advance identification of witnesses to be called at trial, which practice serves a useful purpose and is a proper judicial exercise. Orders entered at pretrial conference have the full force of other orders of the court and they control the subsequent course of the action, unless modified at the trial to prevent manifest injustice (K. S. A. 60-216). *This latter proviso reposes in the trial court a large discretion* and it is the exercise of this discretion plaintiff claims has been abused to his prejudice. . . ." (pp. 519, 520.) (Emphasis added.)

The appellants in the instant case have the burden of not only establishing that error was committed, but also that the error, if any, resulted in prejudice to them. Here the appellants have failed to establish that error was committed. (See K. S. A. 60-261.)

Under this same point the appellants' counsel objected to an exhibit of medical records of the appellee on the ground it contains

statements made by the appellee himself as to how the incident occurred and statements concerning what other doctors and nurses had found upon their examination of the appellee.

The trial court received the exhibit in evidence but said: "I'll strike from the records any conclusions that I find here, before they are submitted to the jury." The appellants failed to incorporate this exhibit in the record presented on appeal, and we cannot ascertain how much of the exhibit was stricken before it was submitted to the jury. Counsel for the appellee in his brief says a lot of the material was culled out of the exhibit and was never seen by the jury.

Under the circumstances the appellants have failed to make it affirmatively appear the trial court erred in the admission of this exhibit into evidence. (See *Thompson v. Norman,* 198 Kan. 436, 424 P. 2d 593.)

The appellants contend the trial court erred in directing the court reporter to read to the jury only the cross-examination of the appellants' witness, Floyd McCord, upon the jury's request to have McCord's testimony read.

It is conceded a jury may request information after retiring to the jury room. (K. S. A. 60-248 [e]; and *Williams v. Benefit Trust Life Ins. Co.,* 200 Kan. 51, 434 P. 2d 765.)

In the instant case the record discloses what the jurors requested as follows:

"The Court: Members of the jury, you indicated to the Court shortly before being released for the lunch period, that you wished the testimony of one witness, or at least portions of the testimony of one witness, read back. Now in the interest of brevity, can the jury tell me exactly what portions of this particular testimony you wish read to you? We have all the jury here.

"The Foreman: I can tell you some part of it; we want to know in the testimony whether he was blinded by the fire truck or not, and there was a difficulty whether he could see everything that was going on; what his testimony to that effect was.

"The Court: This testimony of the witness Floyd McCord, my trial notes indicate that cross-examination of the witness was the first reference to his position as far as visibility goes, and you might begin with the cross-examination, Mr. Husted."

Floyd McCord was a disinterested witness called to testify for the appellants in the case, and according to his testimony on cross-examination was standing possibly 75 feet or more from the fire truck. The record discloses Mr. McCord's ability to see what occurred during the affray was covered in his cross-examination. He

stated in substance that he could not see all the details of exactly what movements were made during the affray.

The appellants in *Phillips v. Carlson,* 178 Kan. 206, 284 P. 2d 604, made an argument similar to the appellants here. There the court at the request of the jury, in the presence of or after notice to the parties or their counsel, required the official court reporter to read the testimony of the witness which was in dispute. When this was done, the objection was made that undue emphasis was given the testimony of this witness. But the court held the objection could not be sustained and the trial court did not err in the absence of the jury's request to have the testimony re-read of other witnesses on the same subject.

After the cross-examination of McCord was read by the official court reporter the jury foreman responded: "As far as I was concerned, that was what I wanted to hear."

Counsel for the appellants contends the foreman of the jury was speaking for himself only and not the other members of the jury. We find no merit in this argument. The jury foreman is the spokesman for the jury, and the trial judge is entitled to rely upon what he says. The jurors were all present when these proceedings were conducted in open court, and there is no indication in the record that any juror expressed dissatisfaction with the foreman's statement.

Here the record discloses the requirements of 60-248 (*e*), *supra,* were fully met.

The appellants having failed to make it affirmatively appear that the trial court erred, the judgment of the lower court must be and is affirmed.