No. 48,575

STATE OF KANSAS, *Appellee,* v. JERRY E. CUNNINGHAM, *Appellant.*

(567 P.2d 879)

Opinion filed July 11, 1977.

*Hugh R. McCullough,* of Topeka, argued the cause and was on the brief for the appellant.

*Albert D. Keil,* Assistant District Attorney, argued the cause, and *Curt T. Schneider,* Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: Defendant-appellant, Jerry E. Cunningham, appeals from convictions by a jury of aggravated robbery (K.S.A. 21-3427) and aggravated assault (K.S.A. 21-3410). The charges stemmed from a robbery of a cashier of the Jayhawk Theater in Topeka on April 23, 1975.

The cashier, Mrs. Helen Tucker, testified that sometime around 9 p.m. a person, who was later identified by her as defendant, came to the cashier's window, produced a revolver, pointed it through the window at her and demanded money. Mrs. Tucker gave the defendant $70.00 or $80.00 in bills, after which defendant ran from the theater. Defendant was observed by two other witnesses who were on the sidewalk at the time. One of these witnesses, Roger Pickering, saw defendant enter a pickup truck, leave it quickly and then run to a taxicab which he entered. At this point Mr. Pickering observed the police arrive and remove defendant from the taxicab. Another state's witness, Mr. Epefanio

Rocha, testified that he was in his pickup truck waiting for his wife to get off work at about 9:30 p.m., when defendant got into the pickup, pointed a gun at Rocha, and demanded that he drive off. Rocha refused and defendant exited the pickup. Police officers testified that defendant had $105.00 in bills wadded up in his pants pocket and a loaded .38 special caliber revolver. The officers further testified that at the time of his arrest defendant did not appear to be under the influence of either narcotics or alcohol.

The Shawnee County Public Defender's Office was appointed to represent defendant. The public defender appeared for defendant in various preliminary matters until January 1976, when defendant decided to represent himself and requested that the public defender withdraw as counsel.

The record indicates that defendant was interrogated by the trial court at the time of his initial request to have the public defender withdraw. Immediately before trial, the court held a much more extensive hearing in chambers concerning defendant's *pro se* representation and, after extensive interrogation of defendant and a careful admonition as to his responsibilities in undertaking self-representation, the trial judge granted defendant the right to represent himself. However, the court informed defendant that counsel from the public defender's office would be appointed to sit beside him at trial and would be available for any advice that might be sought by defendant on matters arising at trial.

At this second hearing, the court outlined the order of trial for defendant's benefit and explained each phase of the trial from *voir dire* examination through the opening statements, presentation of evidence, preparation and giving of instructions, to the closing arguments. The court also informed defendant he could testify in his own behalf or refuse to do so and that he did not have to present evidence because the state always has the burden of proof. The record discloses that at each step in the court's explanation to defendant he was asked by the court if he understood the matters explained and defendant answered in the affirmative in each instance.

Notwithstanding the trial court's careful explanation of procedures, defendant, in his first point on appeal, contends the trial court erred in failing to make a determination of defendant's legal knowledge before allowing him to proceed as his own counsel.

Defendant concedes the trial court went to great length to insure fairness, but now argues this inquiry did not go far enough. He asserts that the only means by which a criminal defendant can be made aware of his disabilities in self-representation is through action by the trial court in giving him:

". . . [As] to the rule of evidence, the rules regarding foundation which must be laid before evidence may be produced, the hearsay rule, some of the more common evidentiary questions which arise in criminal trials, and the proper form for making objections. . . ."

·Defendant offers no suggestion as to what course the court should pursue in case an accused should "flunk" this suggested "mini bar examination."

Section 10 of the Bill of Rights of the Constitution of the State of Kansas specifically provides:

"In all prosecutions, the accused shall be allowed to appear and defend in person, or by counsel; . . ."

This constitutional right of self-representation was recognized in the recent case of *State v. Ames,* 222 Kan. 88, 563 P.2d 1034, wherein we held the right to self-representation to be absolute. We qualified our holding, however, by pointing out that in relinquishing his right to counsel an accused must knowingly and intelligently forego the relinquished benefits associated with the right to counsel. Our holding in *Ames* fully accords with the recent decision in *Faretta v. California,* 422 U.S. 806, 45 L.Ed.2d 562, 95 S.Ct. 2525. In *Faretta* it was held that an accused had an absolute constitutional right to defend himself, but that his decision in this regard must be "knowingly and intelligently made."

In addressing itself to the matter of the technical legal knowledge of an accused in *Faretta* the court said:

". . . We need make no assessment of how well or poorly Faretta had mastered the intricacies of the hearsay rule and the California code provisions that govern challenges of potential jurors on *voir dire.* For his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself." (p. 836.)

Thus, the critical question does not pertain to the extent of · defendant's legal knowledge, but whether he has properly been made aware of the dangers and disadvantages of self-representation—so that the record will establish that he understands what he is doing and has made his choice with his eyes open.

In the instant case the trial judge was fully aware of the *Faretta*

decision and, in fact, read from that opinion in informing defendant of the responsibility he was undertaking. The court said:

". . . In connection with this matter, then, I want to go over certain aspects of this Faretta case so that I am sure you are knowledgeable of your situation. The Supreme Court of the United States in this case said, 'The right of self representation is neither a license to abuse the dignity of the courtroom, nor is it a license not to comply with relevant rules of procedural and substantive law.' In other words, what they are saying there, Mr. Cunningham, is that I have to judge this by the same rules as if a lawyer were representing you. The fact you don't know the technicalities in the law I cannot overlook those technicalities. If the State raises proper objections on matters of procedure and subject, do you understand that?

"DEFENDANT CUNNINGHAM: Yes, sir."

As previously indicated, the trial court then proceeded to carefully explain the order of trial and various procedures. The colloquy between court and defendant concerning these matters consumed more than fourteen pages of the trial transcript. We believe the record fully establishes that defendant's choice of self-representation was knowingly and intelligently made. Under the circumstances the trial court would have committed reversible error in depriving defendant of his constitutional right to self-representation.

For his second point on appeal defendant contends his right to a fair trial was denied by a statement made by the prosecutor in closing argument. The statement was:

". . . If we are going to allow people to come in when they are charged with a crime and say, 'I did not know what I was doing, please turn me loose', then what kind of a state is this going to turn into? . . ."

The record discloses that no objection was lodged at trial. Thus, the question was not preserved for our review. We have repeatedly held that reversible error cannot be predicated upon a complaint of misconduct of counsel in closing argument, where no objection was lodged. (*State v. Watkins,* 219 Kan..81, 547 P.2d 810; *State v. Ralls,* 213 Kan. 249, 515 P.2d 1205; and *State v. Johnson,* 210 Kan. 288, 502 P.2d 802.)

Moreover, even if the point had been properly preserved and the remarks improper, the alleged misconduct falls short of reversible error in the instant case. The sole defense was that defendant was so high on drugs that he was incapable of forming the requisite intent required. Aggravated robbery does not require a specific intent. (*State v. Rueckert,* 221 Kan. 727, 561 P.2d 850.) Likewise, we have held that specific intent is not an essential

element in the crime of aggravated assault as defined in K.S.A. 21-3410(*a*). (*State v. Farris,* 218 Kan. 136, 542 P.2d 725.) Thus, defendant's purported defense of drug intoxication amounted to no defense at all, and his case could not have been prejudiced by the prosecutor's remarks. (See K.S.A. 21-3208[2].) It has long been the rule that before an objectionable statement made by a prosecutor will entitle an accused to a reversal of his conviction, it must first be made to appear that it was injurious to the accused and was likely to affect the jurors to his prejudice. *(State v. King,* 219 Kan. 508, 548 P.2d 803; and *State v. Murrell,* 215 Kan. 10, 523 P.2d 348.)

We find no error shown with respect to either of the points raised by defendant on appeal.

The judgment is affirmed.