No. 48,969

STATE OF KANSAS, *Appellee,* v. GARY DUVAUL, *Appellant.*

(576 P.2d 653)

Opinion filed April 1, 1978.

*Russell Shultz,* of Wichita, argued the cause and was on the brief for the appellant.

*J. Larry Linn,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Vern Miller,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal in a criminal action from a jury verdict which found Gary Duvaul (defendant-appellant) guilty of aggravated kidnapping (K.S.A. 21-3421) and felony murder (K.S.A. 21-3401).

His principal contentions on appeal concern the constitutionality of the venue statute (K.S.A. 22-2603) and alleged misconduct by the prosecutors during the trial and closing argument. The appellant also claims the trial court erred in refusing to grant his motions for separate trial and judgment of acquittal and in submitting various instructions to the jury.

On the afternoon of July 6, 1974, Patricia Gindlesberger, Oma Ray King and Elizabeth (Beth) Kuschnereit went to a prearranged meeting at 1117 Dayton Street, Wichita, Kansas, in order to purchase cocaine from Steven Lockwood. Miss Gindlesberger and Mr. King planned to share the cost of the purchase equally; however, after receiving the cocaine Miss Gindlesberger discovered she had no money. She stated to the group she had left the money in the pocket of her jeans at home.

The threesome then left the Dayton address and went to a swimming party. Upon returning home in the late afternoon Miss Gindlesberger discovered someone had broken into her home and

taken $27.50 from the pocket of her jeans. She immediately telephoned Steven Lockwood and accused him and his room-mate, James Waltrip, of taking the money.

The next day Miss Gindlesberger contacted the appellant, Duvaul, told him of her suspicions, and asked for his aid ·in retrieving the money. He, in turn, telephoned James Bell to assist him. Thereafter, the appellant together with Miss Gindlesberger, Miss Kuschnereit, Mr. King and James Bell went to Lockwood's house.

While Beth Kuschnereit remained in the appellant's car, Miss Gindlesberger, Mr. King and the appellant entered the· house through the front door and proceeded to the back bedroom where James Waltrip was talking on the telephone. Miss Gindlesberger accused Waltrip of stealing her money and the appellant pushed him to the bed and told him "just to wait and to talk it over" to find out about who took the money. At that time Bell entered the house through the back door and arrived in the bedroom with a .38-caliber pistol pointed at Waltrip. When Mr. Waltrip started to raise himself from the bed James Bell shot him in the face between his eyes. Waltrip was killed instantly.

Patricia Gindlesberger and Oma Ray King immediately ran from the bedroom to the front door. Bell then fired three shots. The first shot struck Oma Ray King in the back of the head and killed him instantly. The second shot went wild and the third shot struck Miss Gindlesberger in the back. Her throat was then cut with a butcher knife. The appellant assisted Bell by wiping away fingerprints and other incriminating evidence.

The appellant returned to his car and told Beth Kuschnereit "everything was all right." When Bell arrived at the car approximately four minutes later he instructed the appellant to proceed to his residence. While Bell entered his house to reload his pistol the appellant and Miss Kuschnereit remained in the car. During this time an acquaintance of the appellant named Steve Snyder drove by the house and double-parked. The appellant told him not much was going on and stated he was planning to go to a drive-in. Snyder drove off as Bell and Robert Woolsey, a mutual friend, returned to the car.

Bell instructed the appellant to drive to a deserted farmhouse in the country located several miles from the Santa Fe Road in Butler County, Kansas. Miss Kuschnereit requested in vain to be

taken home. Upon arriving at the farmhouse, the appellant parked his car beside a barn and Bell got out and instructed Miss Kuschnereit to accompany him. At this time he had his gun pointed at her. She said, "Come on, Ed." The two then entered a shed located near the car where Bell pushed Miss Kuschnereit to her knees. At that time she stated, "Eddie, please. You known me better than that. You used to go with me. What are you doing with me?" Bell responded, "Beth, I have killed some people. I am going to have to kill you." Miss Kuschnereit replied, "Ed—dear God, don't kill me." She also asked if she could pray. Bell allowed her to pray for several minutes and then put the gun approximately six inches from her face and "blew her head off."

Woolsey helped Bell strip Miss Kuschnereit of her clothing and personal effects, and the two then rolled the body into the corner of the shed underneath steel drums into a pile of manure. Thereafter, the appellant drove Bell and Woolsey to a bridge on the Santa Fe Road, and the two took the clothing, two purses, the butcher knife, and various other items to the river bank where they burned the items and threw them into the river. During this time the appellant remained in the car. The three returned to Wichita late that night.

A neighbor and close friend of James Waltrip subsequently on July 7, 1974, discovered the bodies at the Dayton Street home and summoned the Wichita Police Department to the scene. The appellant was first questioned by the police on July 11, 1974. After being advised of his *Miranda* rights he agreed to give a statement in which he fabricated an alibi. At his trial he recanted the entire statement. His codefendant Bell also testified at the joint trial on three separate occasions. His testimony implicated the appellant as an active participant in the crimes. The appellant was convicted of the aggravated kidnapping and felony murder of Elizabeth Kuschnereit. His motion for a new trial was denied and this appeal was duly perfected.

The appellant first contends our venue statute, K.S.A. 22-2603, which presumes to make murder transitory, is unconstitutional. While he raised this issue both at his trial and on appeal, he has failed to elaborate his grounds.

Certain basic principles apply when the constitutionality of a statute is under attack. The constitutionality of a statute is always presumed. All doubts must be resolved in favor of the statute's

validity. Before it can be stricken it must clearly appear the statute violates the constitution. Further, if there is any reasonable way to construe a statute to be constitutionally valid, the court should do so. (See *State v. Roseberry,* 222 Kan. 715, 567 P.2d 883 and *State v. Kirby,* 222 Kan. 1, 563 P.2d 408.)

K.S.A. 22-2603 provides:

"Where two or more acts are requisite to the commission of any crime and such acts occur in different counties the prosecution may be in any county in which any of such acts occur."

Our court upheld the constitutionality of the forerunner of the current venue statute, G.S. 1949, 62-404, in *Addington v. State,* 199 Kan. 554, 431 P.2d 532. That statute provided:

"When a public offense has been committed, partly in one county and partly in another, or the act or effects constituting or requisite to the consummation of the offense occur in two or more counties, the jurisdiction is in either county."

This court held in *Addington:*

"It is the general rule that to satisfy the provision of K.S.A. 62-404, to the effect that when 'the act or effects constituting or requisite to the consummation of the offense occur in two or more counties, the jurisdiction is in either county,' there must be an overt act in one county and the effect of such overt act, which is necessary to complete the offense, occurs in another." (Syl. 10.)

Clearly under this rule no violation occurred here. The underlying felony of aggravated kidnapping was an overt act committed in Sedgwick County and the murder necessary to complete the charge of felony murder occurred in Butler County, Kansas.

Furthermore, the appellant's attempt to distinguish *State v. Pyle,* 216 Kan. 423, 532 P.2d 1309 and *State v. Zimmer,* 198 Kan. 479, 426 P.2d 267, *cert. denied* 389 U.S. 933, 19 L.Ed.2d 286, 88 S.Ct. 298 (1967) from the situation in the case at bar is unavailing. He claims in those cases the lack or absence of factual evidence which would have determined where death occurred made both actions transitory. In *Pyle* we held:

"Under K.S.A. 22-2603 (Weeks 1974) venue lies in any county where an act requisite to the commission of the crime takes place." (Syl. 7.)

Moreover, in *Zimmer* we stated:

". . . Inasmuch as the initial abduction occurred in Shawnee county and the kidnaping was triable there, venue on the murder charge became permissible there under 62-404." (p. 499.)

Thus, under the rules formulated in either case the appellant's

argument is without merit. We hold K.S.A. 22-2603 to be valid and the attack upon its constitutionality unconvincing.

The appellant also asserts the assistant district attorneys prosecuting the case, Mr. Barry Arbuckle and Mr. James Rumsey, were guilty of misconduct which prejudicially affected the appellant.

Generally, before an objectionable statement made by the prosecution will entitle the accused to a reversal of his conviction, it must first appear it was injurious to the accused and was likely to affect the jurors to his prejudice. (*State v. Cunningham,* 222 Kan. 704, 567 P.2d 879.) Suffice it to say the appellant's allegations of misconduct and prejudice are not supported by the record or are frivolous in nature and immaterial.

The appellant claims the trial court erred in refusing to grant his motions for separate trial and judgment of acquittal.

The rules for granting a separate trial were discussed most recently in *State v. Jackson,* 223 Kan. 554, 575 P.2d 536. The granting of separate trials is purely a discretionary matter with the trial court. Absent an abuse of the exercise of the power of its discretion, the trial court's action will not be set aside on appeal.

The appellant alleges prejudice because of pretrial publicity surrounding his codefendant Bell, but the record is silent how the media reports influenced any members of the jury. He further asserts his joint trial was a violation of the mandates of the United States Supreme Court as set forth in *Bruton v. United States,* 391 U.S. 123, 20 L.Ed.2d 476, 88 S.Ct. 1620 (1968). *Bruton* stands for the basic proposition that when a codefendant's confession is admitted at the trial and the codefendant does not take the stand, the defendant is denied his constitutional right to confront his witnesses as guaranteed by the Sixth Amendment. Such is not the case here. The appellant had the opportunity and did conduct a full cross-examination of *all* the witnesses against him including his codefendant Bell, Gary Ames and Robert Woolsey. Thus, *Bruton* does not mandate a separate trial.

Moreover, the appellant's motion for judgment of acquittal is controlled by the test reiterated by this court in *State v. Watie, Heard and Heard,* 223 Kan. 337, 346, 574 P.2d 1368. The record reflects the appellant willingly participated in the crime with his codefendant Bell. He failed to extricate himself despite several opportunities, and within four days after the offense fabricated an alibi to the police. The evidence was sufficient for the jury to find

guilt beyond a reasonable doubt. The trial court did not err in overruling the appellant's motion for acquittal.

Finally, the appellant asserts error in certain instructions given to the jury by the trial court. The various instructions questioned by the appellant *all* followed the language of PIK Criminal. The record reflects he failed to object to Instruction 9 on felony murder and Instruction 24 on aiding and abetting. Our review of these instructions, therefore, is limited to a determination whether they were clearly erroneous. The instructions followed PIK, Criminal, § 56.02 (Revised) and PIK, Criminal, § 54.05 (Revised) and were not clearly erroneous. We note the appellant also objects to Instruction 26 on compulsion which follows PIK, Criminal, § 54.13 and quotes language from *State v. Milum,* 213 Kan. 581, 516 P.2d 984. While he admits the instruction follows the law as it exists in this jurisdiction, the appellant argues such an instruction suggests to a jury that if a charge of murder is made, the defense of compulsion is not available to other acts of the defendant which are charged. This argument lacks merit and is not supported by the record. The instruction complied primarily with PIK, Criminal, § 54.13 and no prejudice is shown. Furthermore, the appellant has failed to show error in the submission of the various other instructions to the jury and his alleged claims of error on this point must fail.

The judgment of the lower court is affirmed.