No. 51,055

STATE OF KANSAS, *Appellee,* v. DARWIN WAYNE MAY, *Appellant.*

(607 P.2d 72)

Opinion filed March 1, 1980.

*James W. Morrison,* of Manhattan, argued the cause and was on the brief for the appellant.

*Dennis C. Sauter,* county attorney, argued the cause and *Robert T. Stephan,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: Darwin Wayne May was convicted by a jury of the kidnapping (K.S.A. 21-3420) of a small child. He appeals and we affirm.

On October 4, 1978, at approximately 11:30 a.m., Gary Hadley Thomason, age five, was kidnapped near his home on Beechwood Terrace, Manhattan. May was one of the three men who planned the crime which was to culminate in the receipt of a $30,000 ransom. He was to act as the pickup man for the money and receive $5,000 as his share. The pickup place was the men's room of the Walk-In Lounge, a tavern in Junction City. The day before the kidnapping the defendant made arrangements for one of the

kidnappers to use the car of a friend the following day. The other two went to Manhattan on October 4 and seized the child at 11:30 a.m. They then drove to Wakefield where one of them made the ransom call to Gary's parents. The Thomasons were instructed to place the money in a brown paper bag and drop it at the pickup point no later than 8:00 p.m. that day. The other kidnapper called May and told him they had the child and the money would be dropped as planned. The little boy's father obtained the ransom money and made the drop himself. The Riley County Police, the K.B.I. and the F.B.I. initiated a surveillance plan for the drop area, stationing officers inside the tavern shortly before 8:00 p.m. Defendant May was later identified as having been in the lounge when Gary's father made the drop. May abandoned his attempt to pick up the ransom when he realized the place was surrounded by police. The child was released in the Junction City area at 10:00 p.m. that evening and the ransom money was recovered and returned to Mr. Thomason.

The investigation of the kidnapping terminated in the arrest of all three defendants on October 11, 1978. One of the defendants was identified the day before as having been at the restaurant in Wakefield when the ransom call was made. As a result, the other two kidnappers were questioned on the 11th and both admitted their participation as well as implicated the defendant May.

The trial was held in February, 1979. May was convicted by the jury of kidnapping and was sentenced on April 9, 1979, to a minimum term of 9 years to a maximum of life, an identical sentence to that of the other two kidnappers.

May first contends the trial court erred in denying him a change of venue. Prior to trial he filed a motion for change of venue pursuant to K.S.A. 22-2616. He supported the motion with evidence of newspaper accounts of the kidnapping published in the Manhattan Mercury and the Kansas State Collegian; transcripts of broadcasts on radio stations KMAN and KMKF; oral testimony of the news director of radio stations KMAN and KMKF; and transcripts of news broadcasts of TV station KTSB, Topeka. The trial court denied the motion as not showing sufficient prejudice to warrant a change of venue.

We set forth the law on change of venue in *State v. Porter*, 223 Kan. 114, 117, 574 P.2d 187 (1977), where we stated:

"A change of venue in a criminal case lies within the sound discretion of the

trial court. [Citations omitted.] The burden of proof is cast upon defendant to show prejudice in the community which will prevent him from obtaining a fair and impartial trial. [Citations omitted.] Media publicity alone has never established prejudice per se. Defendant must show prejudice has reached the community to the degree it is impossible to get an impartial jury."

See *State v. Foy,* 224 Kan. 558, 582 P.2d 281 (1978); *State v. Gilder,* 223 Kan. 220, 222-223, 574 P.2d 196 (1977).

In *State v. McLaughlin,* 207 Kan. 594, 598, 485 P.2d 1360 (1971), we stated:

"Furthermore, prejudice must be established 'not as a matter of speculation but as a demonstrable reality.' "

In *Gilder,* the defendant was charged with aggravated robbery, aggravated sodomy, and rape of an elderly woman who stopped at a highway rest area west of Parsons. The trial was held in "a rather sparsely populated community," as noted by the court. In upholding the trial court's denial of the motion for change of venue, this court stated at page 223:

"In this case defendant presented only newspaper articles in support of his motion for change of venue. No evidence or affidavits were introduced to establish the effect publicity might have on prospective jurors. It does not appear that jury selection was inordinately difficult due to pretrial publicity, or that jurors were even aware of the publicity. The trial court properly denied a motion for change of venue under those circumstances."

Defendant cites the case of *Sheppard v. Maxwell,* 384 U.S. 333, 16 L.Ed.2d 600, 86 S.Ct. 1507 (1966), in support of his argument. This is the celebrated case of Dr. Sam Sheppard, who was accused of murdering his wife, Marilyn. The case is easily distinguishable from the case at bar. The newspaper and television coverage was massive with headlines constantly stressing the doctor's lack of cooperation with police and other officials. Every detail of the trial was reported. Representatives of the newspapers and wire services, as well as television and radio reporters were present. Many had assigned seats in the courtroom. Private telephone lines and telegraphic equipment were installed in courthouse news media rooms so reports from the trial could be speeded to the news outlets. Station WSRS was permitted to set up broadcasting facilities on the third floor of the courthouse next door to the jury room, where the jury rested during recesses and later deliberated. Although a courthouse rule prohibited picture taking in the courtroom, it was never enforced. Daily records of

the proceedings were made available to all media people with pictures of everyone involved in the case. In effect, Sheppard was brought to trial, tried and convicted by the media before an actual trial occurred.

It is clear the circumstances of the instant case are not comparable to those present in the *Sheppard* case. The defendant offered only copies of the newspaper articles and evidence that local radio and television stations broadcast the story to the public. We have examined the articles and the transcripts of television and radio broadcasts and find the stories were factual, in temperate language and did not draw conclusions of guilt. In *State v. McCorgary,* 218 Kan. 358, 367, 543 P.2d 952 (1975), *cert. denied* 429 U.S. 867 (1976), this court said:

"The publication of newspaper articles in the local papers does not establish prejudice *per se.*"

See also *State v. Goering,* 225 Kan. 755, 760, 594 P.2d 194 (1979). We hold the defendant May did not sustain the burden of proving prejudice entitling him to a change of venue. Defendant's contention is without merit.

May's next issue presumes our holding his evidence of prejudice inadequate and contends the trial court committed reversible error in denying his motion for funds to conduct a scientific public opinion poll to determine if community prejudice existed. He argues his position is supported by ABA Standards, Fair Trial and Free Press § 3.2(b) (1968), which states: "In addition . . . qualified public opinion surveys shall be admissible as well as other materials having probative value." Appellant argues it is inconsistent to impose the burden of proving community prejudice on him and then to deny him the resources to obtain the evidence to meet that burden, particularly where the costs would be minimal. In addition, he argues voir dire later confirmed that the publicity had an adverse effect on defendant's ability to select a fair and impartial jury. He states that prejudice would have been avoided by a public opinion poll and the resulting change of venue.

The record reveals defendant filed his motion to obtain funds for a public opinion poll prior to trial. A hearing was held December 20, 1978, and the motion was denied. At the hearing on the motion, defendant offered only copies of the newspaper articles and radio transcripts in support of the motion. No af-

fidavits of prejudice or testimony were offered. K.S.A. 22-2616 provides:

"(1) In any prosecution, the court upon motion of the defendant shall order that the case be transferred as to him to another county or district if the court is satisfied that there exists in the county where the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial in that county."

Clearly the trial court had. no evidence that would indicate community prejudice existed at the hearing on the motion. The defendant was provided counsel and through him had resources available to obtain affidavits and witnesses as to community prejudice if it did, in fact, exist. We do not preclude the possibility of the use of a public opinion poll because exigent circumstances could arise where in the sound discretion of the trial court such a poll would be deemed necessary. In the absence of a showing of such circumstances, however, the funds requested would be for a type of "fishing expedition," far outside the gambit of the fair trial guarantees. In *State v. Frames,* 213 Kan. 113, 515 P.2d 751 (1973), the defendant was convicted of perjury and claimed the trial court improperly overruled his request for funds to hire an expert to determine if community prejudice existed. In that case, we stated at page 118:

"The record contains evidence of extensive newspaper publicity about the case in Johnson County. In this state the granting or denial of a motion to provide investigative services to counsel for an indigent defendant in a criminal prosecution is a matter which rests within the sound discretion of the trial court. Its ruling will not be disturbed in the absence of a showing that its discretion has been abused to the extent that a defendant's substantial rights have been prejudiced. [Citations omitted.] The record here does not disclose an abuse of discretion on the part of the trial court in denying the requested funds. The cost for such a survey would have been approximately $1700. The defendant offered no affidavits to show community prejudice at the time defendant's motion was considered. Likewise the record is completely devoid of evidence that difficulties were encountered at the trial in selecting a jury to hear the case."

The instant case is comparable to the *Frames* case in the lack of difficulty in choosing a jury. Here, no difficulty was experienced in obtaining a jury from the list of 70 to 74 persons. Four persons were excused for cause on motion of the State and two were excused on motion of the defendant. Jury selection took only three hours. We find the trial court exercised sound discretion in denying appellant's motion for funds for a public opinion poll on community prejudice. This issue is without merit.

Finally, defendant contends the prosecutor's statements at sentencing were so prejudicial they denied him a fair and impartial hearing. The statements complained of were to the effect that the defendant had been found guilty by a jury after a plea of not guilty; the defendant took the stand and denied participation in the crime with an alibi, and continued to deny involvement even up to the time of sentencing. The prosecutor went on to say,

"I would submit to the Court that not only did he commit this crime of kidnapping but also he committed the crime of perjury. I don't think the Court can lose sight of the fact that if somebody wants to use the system and use the system to the point that he is willing to get up on the stand and lie that he would not receive additional punishment for that—I would not ask Mr. May receive a maximum of 15 years, but I would certainly think that there should be some additional punishment imposed because of how May abused the system, how Mr. May could come forward and get up on that stand, take an oath and then lie before these 12 people."

With that the prosecutor asked that May be given a more severe sentence than the other two kidnappers.

The trial court heard argument of both counsel, reviewed the presentence investigation report, and then sentenced May to 9 years to life, the same sentence as the other defendants who participated in this crime.

Appellant claims the prosecutor's statements had considerable effect on the sentence and bases his objection to them on the ABA Standards, The Prosecution Function § 6.1(b) (1971), where it states:

"Where sentence is fixed by the judge without jury participation, the prosecutor ordinarily should not make any specific recommendation as to the appropriate sentence, unless his recommendation is requested by the court or he has agreed to make a recommendation as the result of plea discussions."

There can be no question the ABA Standards are a sound statement of proper conduct and we confirm it. We also find nothing inconsistent between that standard and K.S.A. 21-4603. In this case, the record shows the trial court followed both the statute and the ABA statement. The court requested a statement from both parties, a practice recognized by the ABA, then proceeded to pronounce sentence disregarding the prosecutor's recommendation. If the statements were objectionable, they were harmless in this case. We recognize that a prosecutor's statements at sentencing concerning the defendant's trial conduct must be cautiously used. An accused certainly has the right to plead "not

guilty" without chancing an accusation of perjury if the jury convicts. However, an accused's taking the stand and swearing falsely falls in a different category. In *United States v. Grayson,* 438 U.S. 41, 44, 57 L.Ed.2d 582, 98 S.Ct. 2610 (1978), at the sentencing hearing the trial judge stated:

"I'm going to give my reasons for sentencing in this case with clarity, because one of the reasons may well be considered by a Court of Appeals to be impermissible; and although I could come into this Court Room and sentence this Defendant to a five-year prison term without any explanation at all, I think it is fair that I give the reasons so that if a Court of Appeals feels that one of the reasons which I am about to enunciate is an improper consideration for a trial judge, then the Court will be in a position to reverse this Court and send the case back for resentencing.

"In my view a prison sentence is indicated, and the sentence that the Court is going to impose is to deter you, Mr. Grayson, and others who are similarly situated. Secondly it is my view that your defense was a complete fabrication without the slightest merit whatsoever. I feel that it is proper for me to consider that fact in sentencing, and I will do so."

The Supreme Court, in affirming the conviction, stated at page 55:

"[W]e are reaffirming the authority of the sentencing judge to evaluate carefully a defendant's testimony on the stand, determine—with a consciousness of the frailty of human judgment—whether that testimony contained willful and material falsehoods, and, if so, assess in light of all the other knowledge gained about the defendant the meaning of that conduct with respect to his prospects for rehabilitation and restoration to a useful place in society."

Inasmuch as the sentencing judge may consider the falsity of defendant's testimony, there can be no objection to the prosecutor offering his suggestions at the request of the trial judge. Appellant's issue is without merit. The judgment of the trial court is affirmed.