No. 52,093

STATE OF KANSAS, *Appellee,* v. WILLIAM ANDREW SHAFFER, *Appellant.*

(624 P.2d 440)

Opinion filed February 28, 1981.

*Robert A. Olsen,* of Hamill, Lentz, Neill & Dwyer, of Shawnee Mission, argued the cause, and *Thomas A. Hamill,* of the same firm, was with him on the brief for the appellant.

*Blair Watson,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Dennis W. Moore,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: William Andrew Shaffer appeals from a jury conviction of attempted aggravated robbery (K.S.A. 21-3301, 21-3427) and felony murder (K.S.A. 21-3401).

William Shaffer, David Payton and Butch Ellifrits got together after work on June 20, 1979. They drank a few beers at Payton's place and examined a handgun Payton had. The three discussed the possibility of robbing somebody and then they left in Payton's old Cadillac. They drove around and looked over potential victims, including a liquor store and several individuals on the streets. Eventually they were attracted to a blue Sunbird automobile driven by Wallace Daniels, Jr. They followed it to Pogo's, a popular discotheque, and they stopped behind the Sunbird automobile. Ellifrits stayed in the Cadillac. The evidence of events thereafter was conflicting but a female passenger in the Daniels car testified that Shaffer appeared at the driver's side of their car and pointed a handgun at Daniels' head as they were sitting in the car. She further testified that Payton came to her side

of the car. Daniels reached back and grabbed the gun in Shaffer's hand. It discharged and the bullet hit Daniels in the head. The robbers fled in the Cadillac. Daniels was rushed to the hospital and placed on a life support system. He was pronounced dead by a doctor two days later.

## JOINDER AND SEVERANCE

Error is urged by appellant Shaffer because the trial court refused to sever the two counts in the information, one charging attempted aggravated robbery and the other charging felony murder. Appellant explains that he desired to testify regarding the robbery count but not on the murder count. When the two counts were not severed for separate trial, the defendant would open himself up to cross-examination on both counts if he took the witness stand. *State v. Ralph*, 217 Kan. 457, Syl. ¶ 8, 537 P.2d 200 (1975). He claims prejudice.

Joinder of counts in the same information is governed by K.S.A. 1980 Supp. 22-3202(1), which reads:

"Two or more crimes may be charged against a defendant in the same complaint, information or indictment in a separate count for each crime if the crimes charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

The two felonies charged in the present case were based on the same act or transaction. The two participants planned a robbery and while in the process of carrying out the robbery the victim was shot and killed. See *State v. Ralls*, 213 Kan. 249, 256-57, 515 P.2d 1205 (1973); *State v. Adams*, 218 Kan. 495, 506, 545 P.2d 1134 (1976). There can be no question under these circumstances joinder was proper and the only remaining question is whether severance should have been ordered to prevent prejudice and manifest injustice to the defendant. When joinder of offenses is proper under K.S.A. 1980 Supp. 22-3202(1), a motion for severance rests largely in the sound discretion of the trial court and severance may be ordered to prevent prejudice and manifest injustice to the defendant. *State v. Howell*, 223 Kan. 282, 573 P.2d 1003 (1977). The accused's election to testify on some but not all of the charges at trial does not automatically require a severance. *United States v. Forrest*, 623 F.2d 1107, 1115 (5th Cir. 1980).

Whether there has been prejudicial joinder involves weighing

prejudice incurred by defendant because of said joinder against judicial economy resulting from a joint trial plus any other considerations which militate against severance. *United States v. Cuesta,* 597 F.2d 903, 919 (5th Cir.), *cert. denied* 444 U.S. 964 (1979). The mere allegation that defendant wanted to testify with respect to one count but not the other is insufficient to require severance without some factual basis on which to evaluate possible prejudice. *United States v. Forrest,* 623 F.2d at 1115. In the present case another consideration militates against severance. The charge of attempted aggravated robbery was the underlying felony on which the felony murder charge depended. Defendant was charged with having killed Wallace Daniels while attempting to perpetrate aggravated robbery against him.

Our double jeopardy statute, K.S.A. 1980 Supp. 21-3108(2)(*a*), provides:

"A prosecution is barred if the defendant was formerly prosecuted for a different crime, or for the same crime based upon different facts, if such former prosecution:

"(*a*) Resulted in either a conviction or an acquittal and the subsequent prosecution is for a crime or crimes of which evidence has been admitted in the former prosecution and which might have been included as other counts in the complaint, indictment or information filed in such former prosecution or upon which the state then might have elected to rely; or was for a crime which involves the same conduct, unless each prosecution requires proof of a fact not required in the other prosecution, or the crime was not consummated when the former trial began."

In the present case, if the two counts were severed, a trial of the felony murder count separately would still require evidence of the attempted aggravated robbery to support the felony murder charge. An acquittal or conviction of the charge of felony murder would necessarily have to include and be based on evidence of the attempted aggravated robbery. Later prosecution on the robbery charge would, in such case, be barred under the above statute.

Under the circumstances set forth in this opinion joinder of a robbery count and a felony murder count was proper under K.S.A. 1980 Supp. 22-3202(1), and no factual basis for prejudice to defendant from the joinder is shown which would justify a severance of counts for separate trials.

## DEFENDANT'S STATEMENTS

Error is urged because of failure to suppress two statements made by defendant, one on June 23, and the other on June 24,

1979. Both statements of defendant were taken verbatim by machine shorthand by certified court reporters. Transcripts were made from the reporter's notes. Two different reporters took defendant's statements. They both testified at trial that the transcripts in question were true, correct and accurate transcripts of the statements given by William A. Shaffer. Both reporters were cross-examined by the defense attorney as to the correctness of the transcripts.

Officer David M. Barton, the interrogator at both statement sessions, also testified at the trial. He acknowledged that the transcripts in question were true, correct and accurate transcripts of the statements of William Shaffer taken on June 23, 1979, and June 24, 1979.

Defendant offers three reasons as to why his statements should have been suppressed.

The defendant first asserts that it was error to offer in evidence a verbatim reading of the statement when he did not have an opportunity to review and correct the statement to ensure its accuracy. In support of this position defendant relies on the rule of civil procedure, K.S.A. 60-230(e), relating to depositions in civil actions.

The statements of defendant were not taken as depositions. They were confessions by an accused, and with sufficient foundation to establish authenticity, accuracy, and voluntariness the statements were admissible in evidence without signature. Our statute relating to confessions requires no signature. K.S.A. 60-460(f). In *State v. Goodwin,* 223 Kan. 257, 258, 573 P.2d 999 (1977), it is stated that a confession which was typed from a tape recording of defendant's oral confession, and then the tape was erased, was admissible, even though it was not signed by the defendant. Our cases are full of instances where oral confessions have been admitted in evidence on testimony of a person who overheard the defendant make the confession. For examples see *State v. Wilson,* 215 Kan. 28, 30, 523 P.2d 337 (1974), and *State v. Harrison,* 228 Kan. 558, 561, 618 P.2d 827 (1980).

The appellant objects to the fact that the court permitted the transcripts to be read verbatim. He asserts that a jury may give undue weight to such a statement when read from the printed transcript. The defendant cites no authority for this claim of error and we find none. In *State v. Watkins,* 219 Kan. 81, 547 P.2d 810

(1976), this court held that a trial court does not abuse its discretion in permitting statements of defendant in writing to go to the jury room. In *State v. Hutchison,* 228 Kan. 279, Syl. ¶ 3, 615 P.2d 138 (1980), we approved the reading of edited statements made by an accused. See also *State v. Purdy,* 228 Kan. 264, 266, 615 P.2d 131 (1980).

The appellant further asserts it was error to read the present transcripts to the jury because the only way he could refute the accuracy of the statements was to waive his Fifth Amendment rights and take the stand. The voluntary nature of the statements was considered and a motion to suppress was heard outside the presence of the jury. At this hearing the appellant had the right to testify as to any inaccuracies, without such testimony going before the jury. He did not do so and can hardly claim prejudice now.

Transcripts typed from the notes of certified shorthand reporters taken during voluntary oral confessions by an accused may be read in evidence when a proper foundation has been established. The authenticity and accuracy of the voluntary confessions may be established by the testimony of the shorthand reporters who took and transcribed the statements or confessions.

Appellant urges error because the trial court did not read both confessions or statements back to the jury. The first statement was exculpatory; the second statement was inculpatory. The jury requested that the court reread the June 24th statement which was inculpatory. The entire statement requested was read to the jury. This was proper under *State v. Shultz,* 225 Kan. 135, Syl. ¶ 6, 587 P.2d 901 (1978).

Defendant relies on *Jacks v. Cloughley,* 203 Kan. 699, 457 P.2d 175 (1969). This is a civil case. Reliance is misplaced. Syllabus 3 clearly supports the State and not the defendant:

"Where the trial court at the request of the jury, in the presence of the parties and their counsel, requires the official court reporter to read the testimony of a witness, limited to the subject matter indicated by the jury, an objection cannot be sustained on the ground that all the testimony of the witness was not read, in the absence of the jury's request to have the entire testimony of such witness read. (K.S.A. 60-248[e].)"

## JURY INSTRUCTIONS

Defendant requested an instruction on circumstantial evidence. The court denied the request. *State v. Wilkins,* 215 Kan.

145, 156, 523 P.2d 728 (1974), discusses the propriety of giving such an instruction:

"The probative values of direct and circumstantial evidence are intrinsically similar and there is no logically sound reason for drawing a distinction as to the weight to be assigned to each. We believe that whatever type of evidence is introduced in a criminal trial (whether it be termed direct, indirect, testimonial, circumstantial or a combination) the trier of fact must apply the same test to convict the defendant and if there is a reasonable doubt as to his guilt then the defendant should not be found guilty. This court now feels it is time to discard our former rule requiring a circumstantial evidence instruction to be given."

*Wilkins* has been followed extensively, most recently in *State v. Costa,* 228 Kan. 308, 319, 613 P.2d 1359 (1980). Defendant cites no authority in support of changing the *Wilkins* rule. In the 1979 supplement to PIK Crim. 52.16, p. 28, the committee recommends that there be no separate instruction as to circumstantial evidence.

Defendant also claims error because of failure to give an instruction as to the voluntariness of his two confessions or statements similar to PIK Crim. 52.17. PIK Crim. 52.17 was revised in the 1979 supplement. The PIK committee now recommends that this instruction not be given. A special instruction bearing on the credence to be given a confession or admission is not required when the jury is given a general instruction bearing on the credibility of the testimony of the witnesses. *State v. Harwick,* 220 Kan. 572, 552 P.2d 987 (1976). In *State v. Stephenson,* 217 Kan. 169, 535 P.2d 940 (1975), this court held it was not necessary for the trial court to instruct on the voluntariness of a confession.

The last error in instructions suggested by appellant has to do with failure to give instructions covering the full range of lesser included offenses of first-degree murder. When murder is committed during the commission of a felony the rule requiring instructions on lesser included offenses does not apply. The felonious conduct is held tantamount to the elements of deliberation and premeditation, which are otherwise required for first-degree murder. It is only when the evidence of the underlying felony is weak and inconclusive that instructions on lesser included offenses may be required. *State v. Foy,* 224 Kan. 558, 582 P.2d 281 (1978); *State v. Sullivan & Sullivan,* 224 Kan. 110, 578 P.2d 1108 (1978). In the present case the attempted aggravated

robbery was clearly and convincingly established and instructions on lesser included offenses were not required or proper.

## BRAIN DEATH

Wallace Daniels, Jr., the victim in this case, remained in a coma for two days after the shot was fired and before he was declared dead. The defendant questions the sufficiency of the evidence to establish death before the life support systems were removed from Daniels. K.S.A. 1980 Supp. 77-202 sets forth two alternative definitions of death to be utilized in Kansas for all purposes including the trials of civil and criminal cases:

"A person will be considered medically and legally dead if, in the opinion of a physician, based on ordinary standards of medical practice, there is the absence of spontaneous respiratory and cardiac function and, because of the disease or condition which caused, directly or indirectly, these functions to cease, or because of the passage of time since these functions ceased, attempts at resuscitation are considered hopeless; and, in this event, death will have occurred at the time these functions ceased; or

"A person will be considered medically and legally dead if, in the opinion of a physician, based on ordinary standards of medical practice, there is the absence of spontaneous brain function; and if based on ordinary standards of medical practice, during reasonable attempts to either maintain or restore spontaneous circulatory or respiratory function in the absence of aforesaid brain function, it appears that further attempts at resuscitation or supportive maintenance will not succeed, death will have occurred at the time when these conditions first coincide. Death is to be pronounced before any vital organ is removed for purposes of transplantation.

"These alternative definitions of death are to be utilized for all purposes in this state, including the trials of civil and criminal cases, any laws to the contrary notwithstanding."

These alternative definitions of death require the opinion of a physician to be "based on ordinary standards of medical practice." In *State v. Shaffer,* 223 Kan. 244, 250, 574 P.2d 205 (1977), it was held no further definition of that phrase was necessary. It was for the jury to determine whether the medical standards required had been met.

Appellant contends this phrase must be further defined and clarified. To do so, he urges this court to supplement the Kansas statutory definition of brain death by requiring physicians to follow the criteria developed by the Harvard Ad Hoc Committee in 1968. These criteria are set forth in *Commonwealth v. Golston,* 373 Mass. 249, 252, 366 N.E.2d 744 (1977), as follows:

"The three basic criteria were (1) unresponsiveness to normally painful stimuli,

(2) absence of spontaneous movements or breathing, and (3) absence of reflexes. The diagnosis of 'brain death' was to be confirmed by an electroencephalogram, and was to be observed over a twenty-four-hour period."

The adoption of the definitive criteria to determine brain death as developed by the Harvard Ad Hoc Committee and their acceptance by the Massachusetts Supreme Judicial Court in *Golston* occurred in the absence of any statutory definition by the Massachusetts legislature. In *Golston* the defendant urged error because the trial court had invaded the province of the legislature in utilizing brain death as defined by courts rather than to use the definition commonly found in a legal dictionary or defined by the legislature.

It was stipulated at the trial of the present case that the sworn testimony of Dr. Ernest J. Hanson, Jr. should be considered as follows:

"1. That Dr. Ernest J. Hanson, Jr., is a practicing, fully qualified neurological surgeon;

"2. That on June 20th, 1979, Dr. Hanson was called to the Shawnee Mission Hospital for the emergency treatment of Wallace E. Daniels, Jr.;

"3. That upon examination Dr. Hanson found an external mark through the scalp of Wallace E. Daniels, Jr. Further Dr. Hanson found a severe injury to the right cerebral hemisphere with considerable swelling of that hemisphere and a wound tract going vertically through the hemisphere superior, to the floor of the middle fossa on the inside of the skull. Dr. Hanson also found metallic density lodged in the medial portion of the middle fossa.

"4. Wallace E. Daniels, Jr. was placed on a 'life support machine' and remained on the machine until it was determined by the ordinary standards of medical practice that he was not capable of spontaneous respiration or cardiac function. Further an electroencephalogram was administered to determine if Wallace E. Daniels, Jr. had any electrical functions of the brain. No electrical activity was noted.

"5. On June 22, 1979 at approximately 11:55 a.m. Dr. Ernest J. Hanson, based on the ordinary standards of medical practice and his observations and tests performed on Wallace E. Daniels, Jr., Dr. Hanson pronounced Wallace E. Daniels, Jr., dead."

In addition, a Dr. Bridgens testified in person as to Daniels' brain death before life support systems were removed. He testified on cross-examination there was (1) unresponsiveness to normally painful stimuli, (2) absence of spontaneous movements or breathing, (3) absence of reflexes, and (4) two electroencephalograms were administered over a 24-hour period with negative results.

The legislature of Kansas defined death in K.S.A. 1980 Supp.

77-202. The phrase "ordinary standards of medical practice" needs no further definition by this court. Further attempts to define the phrase would merely result in confusing an otherwise understandable phrase. The evidence admitted to establish death in this case was sufficient under K.S.A. 1980 Supp. 77-202, the statutory definition of death. (The testimony in this case would also have met the criteria developed by the Harvard Ad Hoc Committee in 1968.)

### PROSECUTORIAL CONDUCT

Appellant complains of certain statements made by the prosecutor, Mr. Moore, to the jury panel during voir dire. His statements were:

"Do all of you understand that the thought of possible punishment is not to influence or enter into your consideration—enter into your deliberations on this case should you be selected as a juror? That is to say, that you will agree with me that you are not to consider what punishment might be imposed should you elect—should you determine that Mr. Shaffer is guilty in this case? Does everybody understand that? If you have a problem with that, please raise your hand.

"(No response.)

"MR. MOORE: I might just say here at this point that the charge here is first degree murder. You're all aware of that and we discussed that. There's been some concern expressed in the past in a case of this nature about a death penalty. Kansas does not have a death penalty. If anybody has any thoughts about that, that should not be a concern of yours, along with the fact that punishment, if there is any to be imposed, is imposed by the Court and not your concern. Does everybody understand that?"

Objection was lodged on the basis that punishment should not be considered by the jury or commented on by the attorneys. (The prosecutor attempted to justify his comments in chambers on the basis of a request by the jury in the trial of David Payton, an accomplice of Shaffer. The jury in the Payton case inquired if there was a death penalty possible in Kansas.)

A motion for mistrial was made on behalf of defendant. The motion was overruled and the court advised the jury at voir dire that the issue of punishment was not the jury's concern. The jury then was instructed that it was to be guided by the instructions and not by the statements of counsel. The jurors indicated they understood this and none had a problem with that concept.

When the punishment, if any, resulting from a criminal prosecution is to be imposed by the court and not by the jury, the duration of possible imprisonment and the lack of any statute

imposing a death penalty in Kansas are not proper subjects of comment by counsel. 75 Am. Jur. 2d, Trial § 229, p. 308. However, in mitigation of the error in the present case, the comments were made at voir dire. An objection to these statements was sustained and the jury was admonished to disregard the counsel's statements.

A death penalty law has been before the Kansas legislature in each session for several years. The Governor has vetoed a death penalty bill at least once. This has had heavy news media coverage. It is almost, if not, common knowledge that Kansas does not have a death penalty statute. Facts and matters of common knowledge, although outside the possible record of the case, when commented on during voir dire can hardly be considered prejudicial error sufficient to justify a mistrial if the jury panel is admonished to disregard said comments. See *State v. Duvaul,* 223 Kan. 718, 722, 576 P.2d 653 (1978); *State v. Cunningham,* 222 Kan. 704, 708, 567 P.2d 879 (1977); and 88 C.J.S., Trial § 181 b, p. 355.

### CHANGE OF VENUE

Appellant urges error because of denial of a motion for change of venue. K.S.A. 22-2616(1) provides that the court on motion of defendant shall order the case transferred to another county or district if the court is satisfied there exists so great a prejudice against the defendant that he cannot obtain a fair and impartial trial in the county where the case is originally filed.

A change of venue will be granted a defendant when he or she can show prejudice has reached the community to the degree that it is impossible to get an impartial jury. Such prejudice may not be established by speculation but must be shown by specific facts or circumstances. *State v. Myrick & Nelms,* 228 Kan. 406, 616 P.2d 1066 (1980). Media publicity has never established prejudice per se. *State v. May,* 227 Kan. 393, 395, 607 P.2d 72 (1980). The granting of a change of venue lies within the sound discretion of the trial court. The burden is on the movant to show prejudice in the community, not as a matter of speculation but as a demonstrable reality. *State v. Foy,* 224 Kan. at 561.

We have examined the news articles attached to the motion for change of venue. The articles alone are relied on to establish prejudice. These articles are largely laudatory of Wallace Daniels, Jr. for his accomplishments and intelligence. In these articles the

defendant's name is mentioned only twice as an accomplice in the crime committed by Payton. His name is merely mentioned in passing. The articles were printed in the days immediately following the shooting. The trial was held six and one-half months thereafter. There was no difficulty in securing a jury to try the case. A similar issue on change of venue, using the identical news articles, was raised in the prior appeal of David Payton, decided in January by this court. The issue was found to be without merit in that case and we find it without merit here. *State v. Payton*, 229 Kan. 106, 622 P.2d 651 (1981).

The judgment is affirmed.