No. 48,931

STATE OF KANSAS, *Appellee,* v. RICHARD HOWELL, *Appellant.*

(573 P.2d 1003)

Opinion filed December 10, 1977.

*Ernest H. Moulos,* of Wichita, argued the cause and was on the brief for appellant.

*Stuart W. Gribble,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, *Vern Miller,* district attorney, *Stephen M. Joseph,* assistant district attorney, and *Bradley Bergman,* legal intern, were with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: This is a direct appeal by defendant-appellant from convictions, by a jury, of (1) aggravated assault (K.S.A. 21-3410), (2) aggravated burglary (K.S.A. 21-3716), (3) rape (K.S.A. 21-3502), and (4) aggravated sodomy (K.S.A. 21-3506). In the information defendant was charged in count one with aggravated assault ". . . with a deadly weapon, to-wit: a knife, and with the intention to commit the crime of rape and aggravated sodomy . . ."; in count two with aggravated burglary ". . . with the intent to commit rape and aggravated sodomy . . ."; in count three with rape; and in count four with aggravated sodomy.

The events leading to count one of the information took place on September 4, 1976, and involved Mrs. S, while the events leading to counts two, three and four took place August 27, 1976, and involved Mrs. P. Defendant's main point on appeal is that the court committed error in not granting a separate trial as to count one from the trial on the other three counts.

On August 27, 1976, Mrs. P and her young son and daughter were living in a southeast area of Sedgwick County. Between 12:00 and 12:30 a.m. Mrs. P was sleeping on the couch in her living room when she heard a knock at the front door. Her children were asleep in their bedrooms. She went to the front

door and found a young man standing on the front porch. At trial, she identified this person as the defendant.

The defendant asked Mrs. P for a drink of water. At first she refused but then relented after the defendant argued with her. Mrs. P went to the kitchen, got a glass of water, and returned to the living room where she found the defendant now standing inside the house. The defendant was holding a small paring knife in his hand; it was pointed at Mrs. P. The blade of the knife was two or three inches long and it had a wooden handle. The defendant said, "I want to go into the other part of the house and let's check each room." The defendant followed Mrs. P through each room of the house and then told her to go to her bedroom.

Once they were in the bedroom, the defendant ordered Mrs. P to take her clothes off and, while still holding the knife, had sexual intercourse with Mrs. P. He then forced her to perform oral sodomy. After announcing, "I'll be back at 7:00 tomorrow night," the defendant left the house.

Mrs. P immediately got her children out of bed and drove to her sister's house a few blocks away where her brother-in-law called the sheriff's department. On the way to her sister's house, Mrs. P saw the defendant on a street corner two blocks from her home. It was later determined that defendant lived in the immediate area.

Eight days later, on September 4, 1976, and two blocks from Mrs. P's home, Mrs. S was standing in her front yard when she saw a young man talking to her neighbor. Mrs. S watched the man walk across the street and knock on the doors of two homes. There was no response at those homes. She then saw him walk back across the street and go to the doors of several more houses. Mrs. S entered her house and shortly after there was a knock at her front door. Her ten-year-old son answered the door.

Mrs. S's son came to the bedroom and said there was a young man at the door who had asked to speak with her. She told her son to say she could not come to the door. Her son left the bedroom but returned in a few seconds saying, "Mother, he says that it's an emergency." Mrs. S then went to the front door. The young man was standing in the doorway partially in the house. When he saw Mrs. S he stepped back onto the porch, between the screen door and the inside door. Mrs. S partially closed the inside door and inquired what he wanted, and he then asked if she had a gas can. Mrs. S said she did not and suggested he try across the street. The

man then told Mrs. S to look down. When she did, she saw he was holding a paring knife, with a three inch blade and a wooden handle, pointed at her. She immediately slammed the door, called the sheriff's department and reported what had happened. The man was arrested a few minutes later by a sheriff's officer and immediately taken back to Mrs. S's home. She identified the young man as the defendant.

Defendant made timely motions to sever count one from the others and for separate trials but such motions were overruled. He took the stand during trial to present testimony in support of his alibi defense as to counts two, three and four and exercised his right to remain silent as to count one. This course was greatly facilitated by counsel for both parties in that neither counsel asked any questions of the defendant about the events of September 4, 1976. Defendant, therefore, was not required to affirmatively assert his fifth amendment rights in front of the jury.

Defendant contends that when he desired to take the witness stand in support of his alibi defense as to counts two, three and four but desired to assert his right to remain silent as to count one, he was prejudiced when he was forced to defend both cases in one trial.

The dangers inherent in such a situation are set out in *Cross v. United States,* 335 F.2d 987 (D.C. Cir. 1964) where the court states at page 989:

"Prejudice may develop when an accused wishes to testify on one but not the other of two joined offenses which are clearly distinct in time, place and evidence. His decision whether to testify will reflect a balancing of several factors with respect to each count: the evidence against him, the availability of defense evidence other than his testimony, the plausibility and substantiality of his testimony, the possible effects of demeanor, impeachment, and cross-examination. But if the two charges are joined for trial, it is not possible for him to weigh these factors separately as to each count. If he testifies on one count, he runs the risk that any adverse effects will influence the jury's consideration of the other count. Thus he bears the risk on both counts, although he may benefit on only one. Moreover, a defendant's silence on one count would be damaging in the face of his express denial of the other. Thus he may be coerced into testifying on the count upon which he wished to remain silent."

The same court has been careful to point out that the accused's election to testify on some but not all of the charges at trial does not automatically require a severance. *(Bradley v. United States,* 433 F.2d 1113, 1122 [D.C. Cir. 1969]; *Blunt v. United States,* 404 F.2d 1283, 1289 [D.C. Cir. 1968], *cert. den.,* 394 U.S. 909, 22

L.Ed.2d 221, 89 S.Ct. 1021 [1969]; *Baker v. United States,* 401 F.2d 958, 976 [1968].) "Such a rule, in fact, would divest the court of all control over the matter of severance and entrust it to the defendant." *(Baker v. United States, id.)*

Joinder of counts in the same complaint or information is governed by K.S.A. 22-3202(1), which reads:

"(1)  Two or more crimes may be charged against a defendant in the same complaint, information or indictment in a separate count for each crime if the crimes charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

The test to determine proper joinder has been set forth numerous times.

".   .   .   When all of the offenses are of the same general character, require the same mode of trial, the same kind of evidence and occur in the same jurisdiction the defendant may be tried upon several counts of one information or if separate informations have been filed they may be consolidated for trial at one and the same trial. (Citing cases)" *(State v. Ralls,* 213 Kan. 249, 256-257, 515 P.2d 1205.)

".   .   .   Whether a defendant may be tried on all separate charges at one trial rests in the sound discretion of the trial court and its holding will not be disturbed on appeal, absent a clear showing of abuse. (Citing authorities)" *(State v. Adams,* 218 Kan. 495, 506, 545 P.2d 1134.)

In this jurisdiction the question of joinder of separate felonies in one information is viewed largely as a question of procedure resting in the sound discretion of the trial court. *(State v. Caldrone,* 202 Kan. 651, 653, 451 P.2d 205 [1969]; *State v. Brown,* 181 Kan. 375, 312 P.2d 832 [1957]; *State v. Aspinwall,* 173 Kan. 699, 252 P.2d 841 [1953]; *State v. Neff,* 169 Kan. 116, 218 P.2d 248 [1950], *cert. den.,* 340 U.S. 866, 95 L.Ed 632, 71 S.Ct. 90.)

While there are certain recognized dangers which may prejudice a defendant when joinder is allowed, a careful examination of the record in this case leads to the conclusion that the prejudice, if any, resulting from non-severance was minimal. The judicious handling of the trial by both judge and counsel avoided any possibility of prejudice which might otherwise have arisen if defendant had been required to affirmatively assert his fifth amendment rights before the jury.

Even if separate trials had been granted it is quite possible that evidence of one event could have been used in the trial of the other under K.S.A. 60-455. Defendant's defense of alibi put his

identity squarely in issue as to counts two, three and four. There were numerous similarities in the two cases. Both victims lived within a few blocks of each other and of the defendant; defendant approached the houses and attempted to gain entrance in much the same manner; a small paring knife was used in both instances and a trial judge could logically have found probative value in allowing admission of evidence under K.S.A. 60-455. *(State v. Gonzales,* 217 Kan. 159, 535 P.2d 988; *State v. Hampton,* 215 Kan. 907, 529 P.2d 127.)* In such case nothing would have been gained by severance, and the defendant cannot be said to have been prejudiced by the combined trial of the charges.

Under our statutes the charges as set forth in the information could be properly joined and we find no abuse of discretion in not granting separate trials.

One matter that does merit additional comment is there is no evidence in the record which would support the allegation in count one that the defendant had ". . . the intention to commit the crime of rape and aggravated sodomy. . . ." The conclusion is inescapable that this surplusage in the information was inserted solely for the purpose of avoiding a possible severance and separate trials. In view of what has been previously said we do not find this prejudiced the defendant but the practice, as such, is not to be condoned.

Defendant raises a second issue alleging there was insufficient evidence to support his conviction on counts two, three and four. He argues that there was insufficient evidence as to identity in that descriptions given by Mrs. P to the police and in the preliminary hearing varied somewhat from defendant's actual physical characteristics. Mrs. P, however, made a positive identification of the defendant in open court during the trial. The jury, obviously, did not believe defendant's defense of alibi.

The issue on appeal in a criminal case is not whether the evidence establishes guilt beyond a reasonable doubt, but whether there is sufficient evidence to form a basis for a reasonable inference of guilt when viewed in a light most favorable to the state. *(State v. Collins,* 215 Kan. 789, 790, 528 P.2d 1221.)

As held in *State v. Calvert,* 211 Kan. 174, Syl. 1, 505 P.2d 1110, "It is the function of the trier of facts, not that of a court of appellate review, to weigh the evidence and pass upon the credibility of witnesses, and where the sufficiency of the evidence is

being reviewed the function of an appellate court is limited to ascertaining whether there was a basis for a reasonable inference of guilt."

We find there was sufficient evidence to sustain the conviction.

The judgment is affirmed.