NOT DESIGNATED FOR PUBLICATION

No. 126,263

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JARED GIHRING,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Riley District Court. GRANT D. BANNISTER, judge. Submitted without oral argument. Opinion filed September 27, 2024. Reversed and remanded with directions.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*David Lowden*, deputy county attorney, *Barry R. Wilkerson*, county attorney, *Kris W. Kobach*, attorney general, for appellee.


Before GREEN, P.J., GARDNER and PICKERING, JJ.

PER CURIAM: Jared Gihring appeals the Riley County District Court's denial of his K.S.A. 60-1507 petition. After a preliminary hearing, the district court denied his motion, holding that Gihring failed to show he was prejudiced by his trial counsel's alleged errors in the handling of his pretrial motions to admit evidence related to S.W., the complaining witness, under the rape shield statute and his motion to sever charges. After careful review, we reverse the district court's denial of Gihring's 60-1507 motion and remand the case to the district court with instructions to hold an evidentiary hearing on it.

1

*Gihring's Underlying Case*

Gihring was charged with rape of two Kansas State University (KSU) women—S.W. and C.S.—under the theory that both women were incapable of consenting to sexual intercourse because of the effect of alcohol. In S.W.'s case, Gihring was also charged in the alternative with rape under the theory that she was unconscious or physically powerless. In C.S.'s case, Gihring was also charged with aggravated criminal sodomy. We refer the reader to *State v. Gihring*, No. 118,234, 2019 WL 1868364, at *1 (Kan. App. 2019) (unpublished opinion), for the full facts of the case, as we find it unnecessary to include them here.

Gihring filed two pretrial motions that are relevant here: a rape shield motion to admit evidence of S.W.'s previous sexual conduct on the day that Gihring allegedly raped her, and a motion to sever C.S.'s case from S.W.'s case.

> "Before trial, Gihring moved to admit evidence of S.W.'s previous sexual conduct on the day that Gihring allegedly raped her. The trial court held a hearing on the motion. The following information was not introduced at trial. It was introduced only in a closed hearing before the trial court under the rape shield statute. See K.S.A. 2018 Supp. 21-5502.
> "Gihring wanted to admit evidence that after briefly meeting, S.W. and [Jack] Farquhar had sexual intercourse in Farquhar's truck at Pillsbury Crossing. Further, they engaged in oral sex in the truck while traveling to the fraternity house and had sexual intercourse in the sleeping dorm at the fraternity house. Because of the public nature of these sex acts, several witnesses saw the sexual activity between S.W. and Farquhar. Gihring argued that the evidence was relevant to the issues of consent and to S.W.'s credibility. The trial court granted the motion in part and denied the motion in part. The court excluded evidence that S.W. had sex with Farquhar at Pillsbury Crossing and in Farquhar's truck on the way to the fraternity house, but the court allowed evidence that S.W. had sex with Farquhar at the fraternity house. The court's order stated, 'If, at some point during the trial, the defendant believes the door has somehow been opened to

inquire about prohibited matters, permission must be sought and granted by the Court outside of the presence of the jury.'

"Gihring moved the court to reconsider. The trial court again held a hearing. Gihring argued that he had new information that, though S.W. told police she did not remember her sexual activity with Farquhar, she told a KSU representative that she was 'unconscious' and raped by Farquhar. He argued that this was relevant to whether she was actually asleep or unconscious during the encounter with Gihring, or whether she simply did not remember consenting to it. . . .

"Before trial, Gihring also moved to sever the charges into two separate trials. The State objected. The trial court held a hearing on the motion to sever. Gihring argued the only similarity between the two incidents was the nature of the charges and that everyone had been drinking alcohol. The court denied the motion to sever." 2019 WL 1868364, at *4-5.

In May 2017, a jury convicted Gihring of rape under the theory that S.W. was unconscious or physically powerless. He was acquitted of rape under the theory that S.W. was so intoxicated that she could not consent, and was acquitted of all charges related to C.S. The district court sentenced him to 155 months in prison and lifetime postrelease supervision. Gihring directly appealed his conviction. But a split panel of this court found no reversible error and affirmed his conviction and sentence. *Gihring*, 2019 WL 1868364, at *20.

Gihring then filed a motion under K.S.A. 60-1507, raising several claims. The district court held a preliminary hearing on the motion, took it under advisement, and then denied it in full. Gihring now appeals, raising several claims of error.

3

*Did the District Court Err in Denying Gihring's K.S.A. 60-1507 Motion?*

On appeal, Gihring raises three of the arguments raised before the district court. First, he argues that the district court erred in holding that his trial counsel was not ineffective in her litigation of the rape shield motion. Second, he argues that the district court erred in holding that his trial counsel was not ineffective in her litigation of the motion to sever S.W.'s charges from C.S.'s charges. Third, he argues that cumulative errors by his trial counsel required a remand for an evidentiary hearing on his claims.

We address each of these arguments in turn. We consider Gihring's other arguments raised in his K.S.A. 60-1507 motion and argued before the district court, but not raised in this appeal, to be waived and abandoned. See *Crowther v. State*, 45 Kan. App. 2d 599, 563, 249 P.3d 1214 (2011) (applying waiver rule in context of K.S.A. 60-1507 appeal).

A. *Standard of Review and Legal Principles Relating to K.S.A. 60-1507 Motions*

A district court may resolve a K.S.A. 60-1507 motion in three ways. Here, the court determined that the motion raised a potentially substantial issue of fact, supported by the files and record, and held a preliminary hearing after appointment of counsel to determine whether in fact the issues in the motion were substantial. See *Mundy v. State*, 307 Kan. 280, 301, 408 P.3d 965 (2018) (quoting *Lujan v. State*, 270 Kan. 163, 170-71, 14 P.3d 424 [2000]).

When, as here, the district court holds a preliminary hearing on a K.S.A. 60-1507 motion, we review the district court's findings of fact to determine whether the findings are supported by substantial competent evidence and whether they suffice to support the district court's conclusions of law. *State v. Adams*, 311 Kan. 569, 578, 465 P.3d 176 (2020). But see *Hayes v. State*, 307 Kan. 9, 12, 404 P.3d 676 (2017) ("When the district

4

court reviews the motion, files, and records; holds a preliminary hearing; and summarily denies a K.S.A. 60-1507 motion—as occurred here—we are in as good a position as the district court to consider the merits. As such, review is unlimited. See *Sola-Morales*, 300 Kan. at 881, 335 P.3d 1162."). But the appellate court does have unlimited review over the district court's conclusions of law and its decision to grant or deny the K.S.A. 60-1507 motion. *Adams*, 311 Kan. at 578.

Gihring's two primary arguments on appeal raise claims of ineffective assistance of counsel. When a defendant alleges ineffective assistance of counsel under K.S.A. 60-1507, the district court shall hold an evidentiary hearing on the motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." K.S.A. 2023 Supp. 60-1507(b); Kansas Supreme Court Rule 183(f) (2024 Kan. S. Ct. R. at 241).

We analyze claims of ineffective assistance of trial counsel under the two-part test from *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), adopted by the Kansas Supreme Court in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). Under the first part, the movant must show that trial counsel's performance was deficient. The second part asks whether there is a reasonable probability that, absent trial counsel's unprofessional errors, the result would have been different. *State v. Evans*, 315 Kan. 211, 217-18, 506 P.3d 260 (2022).

To establish deficient performance under the first prong, the movant must show that trial counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel must be highly deferential. A fair assessment of counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, reconstruct the circumstances surrounding the challenged conduct, and evaluate the conduct from counsel's perspective at the time. 315 Kan. at 218. A court considering a claim of

ineffective assistance of counsel must strongly presume that trial counsel's conduct fell within the wide range of reasonable professional assistance. That is, the movant must overcome the strong presumption that, under the circumstances, counsel's action might be considered sound trial strategy. *Khalil-Alsalaami v. State*, 313 Kan. 472, 486, 486 P.3d 1216 (2021).

Under the second prong, the movant must show that trial counsel's deficient performance was prejudicial. To establish prejudice, the movant must show with reasonable probability that the deficient performance affected the outcome of the proceedings, based on the totality of the evidence. A court hearing a claim of ineffective assistance of counsel must consider the totality of the evidence before the judge or jury. 313 Kan. at 486. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Evans*, 315 Kan. at 218.

Before we begin our review of Gihring's claims, we acknowledge his burden. "A movant has the burden to prove his K.S.A. 60-1507 motion warrants an evidentiary hearing; the movant must make more than conclusory contentions and must state an evidentiary basis in support of the claims or an evidentiary basis must appear in the record." *Sola-Morales v. State*, 300 Kan. 875, Syl. ¶ 3, 335 P.3d 1162 (2014). Once a movant satisfies that burden, we are "'required to grant a hearing, unless the motion is "second" or "successive" and seeks similar relief.'" *Holmes v. State*, 292 Kan. 271, 274, 252 P.3d 573 (2011) (quoting *Holt v. State*, 290 Kan. 491, 495, 232 P.3d 848 [2010]).

B.  *Claim of Ineffective Assistance of Counsel Regarding Rape Shield Evidence*

First, Gihring argues that the district court incorrectly held that S.W.'s willingness to consent to sex with Jack Farquhar at Pillsbury Crossing, which Gihring claims to have personally witnessed, was not relevant to whether Gihring began having intercourse with S.W. while she was unconscious. Gihring contends that the Pillsbury Crossing evidence

6

is relevant to his consent defense and that his counsel's litigation of the rape shield motions was deficient because she failed to give the district court a factual basis for finding that evidence admissible under the rape shield statute.

        1. *Gihring preserved his claim of ineffective assistance of counsel on the rape shield evidence.*

We first address a procedural argument. The State asserts that, when denying Gihring's 60-1507 motion challenging counsel's litigation of the rape shield evidence, the district court ruled on both the performance and prejudice prongs of *Strickland*, yet Gihring challenges solely the prejudice prong on appeal. And because ineffective assistance of counsel requires a showing of both inadequate performance and prejudice, Gihring cannot show error here. Gihring filed no reply brief to contest this argument. And, consistent with the State's assertion, Gihring's brief on appeal states that "the district court only dealt with the prejudice prong on the issues presented."

Gihring's conclusion is understandable. Our review of the district court's ruling leaves us uncertain whether the district court ruled on both the performance and the prejudice prongs of the ineffective assistance of counsel test when ruling on counsel's handling of the rape shield motion, which Gihring challenges on appeal. True, in concluding its findings on Gihring's four rape shield arguments, the district court held "[t]here is not an adequate basis to find any objectively unreasonable representation by trial counsel relating to this claim, or to conclude there is a reasonable probability that the outcome of trial would have been different had such evidence been presented."

But read in context, perhaps these words relate only to the immediately preceding argument in the court's decision that counsel, "when litigating a motion to reconsider the rape shield ruling, should have argued the sorority discipline evidence differently to establish a motive to fabricate." The court found that S.W. had "immediately claimed she

7

was raped while at the fraternity house before she knew about any possible sorority disciplinary action." It then made the conclusion above, rejecting both prongs of the *Strickland* analysis. That sorority discipline argument is not challenged on appeal.

On the other hand, maybe the court meant for its conclusion that neither prong was met to relate to all of Gihring's rape shield claims. We find some support for this because the district court made some conclusions as to performance or prejudice on the other three ineffective assistance of counsel claims (non-rape shield) raised by Gihring in his 60-1507 motion, before addressing his cumulative error argument.

We thus look more closely at the court's ruling on the rape shield claim Gihring raises on appeal. The court first acknowledged Gihring's argument that "it was objectively unreasonable for counsel not to ask, in the course of litigating the rape shield motions, this court to consider evidence about how movant had told Quinn Jones that he tapped S.W. on the shoulder to wake her up before engaging in intercourse." It then echoed Gihring's argument that "such evidence, when considered with the evidence of S.W.'s sexual encounter with Farquhar at Pillsbury Crossing, would have caused this court to rule that the sexual encounter at Pillsbury Crossing was relevant evidence to be presented." But the court then stated:  "This Court is not convinced," and detailed why in words largely lifted from the State's response to Gihring's motion.

> "S.W.'s willingness to engage in sexual activity at Pillsbury Crossing is not relevant to the question of whether [Gihring] initially had intercourse with S.W. while she was unconscious. Even if this court had considered Jones' testimony in the course of ruling on the rape shield motions, it would not have changed the basis for my ruling. And even if this court would have allowed admission of evidence of S.W.'s sexual encounter at Pillsbury Crossing at trial, it was still not relevant or probative of whether S.W. was unconscious when movant initiated sexual intercourse with S.W. [Gihring] has failed to show that there is a reasonable probability that Quinn Jones' testimony would have changed my ruling or that it would have changed the verdict."

8

If there is a conclusion as to this issue, it is in the last sentence—that Gihring failed to show prejudice.

Yet the court also found in this paragraph that S.W.'s willingness to engage in sexual activity at Pillsbury Crossing was irrelevant to whether Gihring initiated sexual intercourse with S.W. Nothing else in the court's decision arguably relates to counsel's performance on the rape shield motion which Gihring raises on appeal. So maybe the district court, by ruling on relevance, implicitly found that counsel acted reasonably because the evidence that Gihring faults her for not presenting during the rape shield motion was irrelevant, thus ruling on the performance prong. See, e.g., *Greene v. State*, No. 87,031, 2001 WL 37132544, at *2 (Kan. App. 2001) (finding trial counsel's unsuccessful attempt to introduce certain evidence did not amount to deficient performance because that evidence was irrelevant).

But even if the district court thus ruled that counsel was not deficient in her performance, Gihring argues that she was. Despite Gihring's stated belief that the district court ruled only on the prejudice prong on the issues presented, Gihring's brief extensively argues that counsel was ineffective because evidence of S.W.'s sexual conduct at Pillsbury Crossing was relevant to and probative of his defense of consent. We thus cannot consider this issue waived and abandoned. See *In re Adoption of Baby Girl G.*, 311 Kan. 798, 803, 466 P.3d 1207 (2020) (holding issue not briefed is deemed waived or abandoned). And Gihring's brief alleges other omissions trial counsel made in litigating the rape shield motion. Under these circumstances we reach the merits of the claim, rather than find it unpreserved.

2. *Counsel may have been ineffective in litigating the rape shield evidence.*

K.S.A. 21-5502, known as the "rape shield statute," provides that evidence of a rape victim's previous sexual conduct is generally inadmissible. "In the rape shield act the

legislature sent a clear message to the courts that a rape victim's prior sexual activity is generally inadmissible since prior sexual activity, even with the accused, does not of itself imply consent to the act complained of." *State v. Stellwagen*, 232 Kan. 744, 747, 659 P.2d 167 (1983). Exceptions to that rule exist, however. "[T]he rape shield statute does allow evidence of a victim's prior sexual conduct if it is proved relevant to any fact at issue, such as the identity of the rapist, the consent of the victim, and whether or not the defendant actually had intercourse with the victim." *State v. Atkinson*, 276 Kan. 920, 926, 80 P.3d 1143 (2003). Further, "the rape shield statute does not preclude the admission of relevant evidence that impeaches the credibility of the witness." *State v. Montes*, 28 Kan. App. 2d 768, 773, 21 P.3d 592 (2001).

Gihring asserts that evidence of S.W.'s prior sexual conduct was not precluded because it is relevant to her consent and to impeach her credibility—two recognized exceptions to the rape shield statute:

> "When addressing the relevancy of prior sexual conduct on the issue of consent, the inquiry must be whether the victim's consent to sexual activity in the past, regardless of other factual situations, makes it more probable or less probable that the victim consented to sexual activity on this occasion. See *State v. Hudlow*, 99 Wash. 2d 1, 10, 659 P.2d 514 (1983). In addition, a complaining witness' prior sexual behavior is relevant to credibility when the witness' past sexual activities are so factually similar to the defendant's version of the incident in question as to diminish his or her credibility. See 99 Wash. 2d at 10-11." *State v. Perez*, 26 Kan. App. 2d 777, 781, 995 P.2d 372 (1999).

Gihring's counsel argued these exceptions when litigating the rape shield motion.

But in his 60-1507 motion, Gihring targets evidence that his trial counsel did not proffer in her rape shield motions. He contends that although his counsel argued that evidence of S.W.'s prior sexual conduct was admissible because it was relevant to her consent and to her credibility, trial counsel did not give the district court the facts

necessary to show that Gihring fell within these exceptions. On appeal, Gihring narrows his argument, alleging that counsel was deficient in how she handled S.W.'s consent, not S.W.'s credibility.

First, as to S.W.'s consent to sexual activity earlier that day, trial counsel failed to argue that S.W.'s quick consent to sexual activity with Farquhar, whom she had just met at Pillsbury Crossing, which conduct Gihring and others witnessed, made it more probable that Gihring thought S.W. also quickly consented to sexual activity with him later that day. In fact, the State asserted to the district court during the rape shield hearing that this was *not* Gihring's theory:

> "[THE STATE]: . . . Well this isn't a case where the defendant says well you know I thought she—I thought she was consenting with me because she consented to him or like there was a—
> "THE COURT: You say it's not?
> "[THE STATE]: It is not."

Trial counsel never refuted that conclusion. Yet this was an important part of Gihring's consent defense as asserted in his K.S.A. 60-1507 motion. Trial counsel never argued to the district court that Gihring claimed to have been present at Pillsbury Crossing, that he had seen S.W.'s quick consent to sexual intercourse with Farquhar (Gihring's fraternity brother whom S.W. had just met that afternoon).

Second, trial counsel failed to present or proffer that Gihring would testify that he had asked S.W. for and received consent to sexual intercourse with him that evening. Instead, trial counsel argued that evidence *not from Gihring* but from Farquhar and others who saw the ongoing sexual activity showed S.W. was conscious and that her acts with Gihring were thus conscious and consensual. Trial counsel's primary argument that S.W. was conscious when Gihring initiated sex with her focused on counsel's claim that S.W. was conscious when she had sex with Farquhar, although S.W. claimed she was

11

unconscious. This challenged S.W.'s credibility yet failed to present the essence of Gihring's consent defense.

Third, the Kansas Court of Appeals found on direct appeal that Ghiring was *not* present at Pillsbury Crossing during the sexual encounter. *Gihring*, 2019 WL 1868364, at *1 ("Gihring was not at Pillsbury Crossing to witness any of SW's behavior there."). But in his 60-1507 motion, Gihring asserts that a photo shows him, S.W., and Farquhar together at Pillsbury Crossing on the relevant date. Yet trial counsel never proffered during her rape shield motion litigation that Gihring was there or that he would testify that he had tapped S.W. on the shoulder, that she had awakened, and that she had consented to sexual intercourse with him.

Fourth, counsel never explained why Gihring believed S.W.'s consent was valid. Gihring's presence at Pillsbury Crossing allowed him to see how quickly the sexual encounter progressed between S.W. and Farquhar, arguably giving Gihring a factual basis for believing that S.W.'s quick consent to sexual intercourse with him was valid. In the words of *Perez*, "the victim's consent to sexual activity in the past . . . makes it more probable . . . that the victim consented to sexual activity on this occasion." 26 Kan. App. 2d at 781.

Fifth, when arguing the rape shield motion, trial counsel also failed to argue a consent defense for Gihring based on Quinn Jones' testimony. Jones' statement—that Gihring had told him that he had asked for and had received consent from S.W.—was in the discovery from the State, yet trial counsel did not refer to it in litigating the rape shield motion. Jones' testimony may have added credibility to Gihring's assertions about S.W.'s consent.

12

These facts proffered in Gihring's 60-1507 motion, but not litigated by trial counsel during her rape shield litigation, would have given the district court a factual basis for understanding Gihring's defense of consent:

- that Gihring was present at Pillsbury Crossing;
- that Gihring had seen S.W.'s quick consent to sexual intercourse with Farquhar;
- that Gihring had awakened S.W. and asked her for and received her consent to sexual intercourse with him that evening before beginning sexual relations with her;
- that because Gihring had seen S.W.'s acts with Farquhar earlier that day, he believed her consent was valid; and
- that Gihring had told Jones the day after S.W. had sex with Farquhar and Gihring that S.W. had consented to have sex with Gihring after he tapped her on the shoulder and asked if she wanted to have sex.

The district court, in ruling on a different argument in Gihring's 60-1507 motion, found that evidence of S.W.'s sexual acts at Pillsbury Crossing may have been relevant to the degree of her intoxication, but had no bearing on Gihring's defense of consent to the claim S.W. was unconscious:

> "This argument tends to align more with the charge movant was acquitted of involving S.W. The jury acquitted defendant on the count regarding the intoxication rendering S.W. incapable of giving consent. What happened at Pillsbury Crossing with Farquhar did not have any bearing on whether S.W. was asleep when movant first sexually assaulted her."

Although the court made this statement when ruling on trial counsel's failure to introduce a photo showing Gihring was present at Pillsbury Crossing (an issue not raised in this appeal), this is the only explanation we have found in the record for why the district court

13

may have found the Pillsbury Crossing evidence irrelevant in ruling on Gihring's consent defense to the charge on which he was found guilty.

Determining relevance requires two inquiries. First, the court looks to whether the evidence is material—if it has some real bearing on the decision in the case—a question of law we review de novo. *State v. Alfaro-Valleda*, 314 Kan. 526, 533, 502 P.3d 66 (2022). Second, the court considers whether the evidence is probative—meaning it tends to prove a material fact. *State v. Levy*, 313 Kan. 232, 237, 485 P.3d 605 (2021). This is where the district court got it wrong—S.W.'s sexual encounter at Pillsbury Crossing, witnessed by Gihring, had a real bearing on whether Gihring believed S.W. consented before he initiated sexual intercourse with her. The district court's conclusion to the contrary shows its lack of understanding of the factual basis tending to prove Gihring's defense of consent to the charge he raped S.W. while she was unconscious. And that lack of understanding likely flowed from trial counsel's litigation of the rape shield motion.

The proffered facts would likely have led the district court to view the Pillsbury Crossing evidence in a different light. See *Perez*, 26 Kan. App. 2d at 781 (listing factors for relevancy to include distinctive sexual patterns so closely resembling defendant's version of alleged encounter as to tend to prove consent on the questioned occasion; evidence of prior sexual conduct by complainant with others, known to defendant, tending to prove he believed the complainant was consenting to his sexual advances; and whether prior sexual conduct and charged act[s] of defendant are proximate in time).

These omissions deprived the district court of its ability to consider the requested rape shield evidence in light of Gihring's defense of consent to S.W.'s charge of rape while unconscious. The district court had no facts on which to credit any consent defense against S.W.'s claim that she was unconscious or asleep and awoke to Gihring having sex with her. Yet it was trial counsel's burden to provide the court with the specific factual

14

basis to support the admission of the sexual conduct evidence. See, e.g., *State v. Smith*, 39 Kan. App. 2d 204, 178 P.3d 672 (2008); K.S.A. 21-5502. Gihring's claim, supported by his proffer, that trial counsel failed to adequately present a factual basis in her litigation of the rape shield evidence meets Gihring's burden to state an evidentiary basis in support of his motion and raises a substantial issue as to her performance.

3. *The district court erred in finding lack of prejudice.*

The factual issues outlined above spill over to the district court's finding that Gihring was not prejudiced by his trial counsel's litigation of the rape shield evidence motion.

The court found that even if it had considered Jones' testimony, Gihring failed to show a reasonable probability that such testimony would have changed its ruling or the verdict. Yet the district court does not say why Jones' testimony would not have changed its ruling on the rape shield motion. It offers no findings of fact to support its conclusion that we can review.

The district court similarly held that even if it had allowed admission of evidence of S.W.'s sexual encounter at Pillsbury Crossing at trial, it was still not relevant or probative of whether S.W. was unconscious when movant initiated sexual intercourse with S.W. But, as detailed above, that evidence was relevant to Gihring's defense of consent, which necessarily entails evidence that S.W. was conscious. Whether S.W. was conscious or unconscious when Gihring allegedly asked for her consent to have sex was disputed and so was a fact question for the fact-finder. The district court's decision on prejudice may have been different had it heard during litigation of the rape shield motion a proffer of the omitted facts outlined above relevant to Gihring's defense of consent to the charge of having raped S.W. while she was unconscious.

15

Ineffective assistance of counsel is notoriously difficult to judge without evidence on the claim. "Although there are circumstances when no evidentiary record need be established, when the merit or lack of merit of an ineffectiveness claim about trial counsel is obvious . . . such circumstances are extremely rare." *Rowland v. State*, 289 Kan. 1076, 1084-85, 219 P.3d 1212 (2009). Because we lack evidence of what was or should have been known to trial counsel at the time, and of whether trial counsel's acts and arguments flowed from strategic choices or otherwise, we remand for an evidentiary hearing on trial counsel's litigation of the rape shield motions.

C. *Counsel May Have Been Ineffective in Litigating the Motion to Sever*

Gihring also argues that the district court erred by not granting an evidentiary hearing on his K.S.A. 60-1507 motion claiming that his counsel was ineffective in her litigation of his motion to sever. Gihring argues that although she raised other grounds for severance, she failed to raise the impact on his right to testify or to remain silent. Gihring argues that his trial counsel should have argued to the district court that his right to testify would be compromised by the joinder of charges because he wanted to testify about events with S.W. but did not want to testify about events with C.S. He contends that by not arguing for separate trials based on Gihring's right to testify, his trial counsel led the district court to deny the motion to sever, infringing on his right to testify.

The district court held:

"This Court has entertained numerous motions for severance, joinder and consolidation. This Court is aware of the ripple effect these decisions have in relation to other decisions to be made by the parties. This potentially includes the defendant deciding whether to testify or not. To the extent counsel focused on other reasons for severance, this Court considered the prejudice that could result from this ruling. Within the context of the law, the Court was not persuaded that this consideration negated all other reasons bearing on the severance decision. Having presided over the original

16

motions hearing, a new evidentiary hearing would not be of benefit in evaluating this claim. Even assuming the movant would now testify this ruling affected his decision to not testify. There is no reasonable probability this Court would have changed its ruling. Likewise, the outcome of the trial. This Court is satisfied that this argument would not establish the second prong.

"Movant also asserts that he had to testify to establish his defense related to S.W.'s alleged unconsciousness. The record shows that after the defense rested this court asked movant as to whether he wanted to exercise his right to testify in the case, and movant said he did not want to do so. The record further shows that movant did not have to testify to establish his defense related to S.W.'s alleged unconsciousness: Quinn Jones testified that movant said S.W. consented to have sex after he tapped her on the shoulder and asked if she wanted to have sex. This testimony combined with the other evidence presented in the case gave movant the opportunity to present his defense without taking the stand. There is no reasonable probability that the outcome of the one guilty verdict would have been different had the charges been severed and had movant testified at the separate trial."

The district court thus held that Gihring was not prejudiced by his trial counsel's litigation of the motion to sever. It did not address trial counsel's performance, so neither do we.

In his direct appeal, Gihring raised other reasons why joinder was not proper under K.S.A. 22-3202. Our task here is narrower—to determine whether Gihring has met his burden to allege facts sufficient to warrant an evidentiary hearing on his clam that trial counsel was ineffective for failing to raise a specific argument when litigating his motion to sever the charges and that severance was necessary to preserve Gihring's right to testify in defense of the S.W. charges, while preserving his right to remain silent on the C.S. charges.

Even when joinder is proper under the statute, the district court maintains discretion to sever the charges "to prevent prejudice and manifest injustice to the

17

defendant." *State v. Shaffer*, 229 Kan. 310, 312, 624 P.2d 440 (1981). As our Supreme Court has set out, certain dangers are inherent in joinder:

> "'Prejudice may develop when an accused wishes to testify on one but not the other of two joined offenses which are clearly distinct in time, place and evidence. His decision whether to testify will reflect a balancing of several factors with respect to each count: the evidence against him, the availability of defense evidence other than his testimony, the plausibility and substantiality of his testimony, the possible effects of demeanor, impeachment, and cross-examination. But if the two charges are joined for trial, it is not possible for him to weigh these factors separately as to each count. If he testifies on one count, he runs the risk that any adverse effects will influence the jury's consideration of the other count. Thus he bears the risk on both counts, although he may benefit on only one. Moreover, a defendant's silence on one count would be damaging in the face of his express denial of the other. Thus he may be coerced into testifying on the count upon which he wished to remain silent.'" *State v. Howell*, 223 Kan. 282, 284, 573 P.2d 1003 (1977).

Gihring asserts those same dangers are present here.

The district court found lack of prejudice from counsel's performance for two reasons. First, Gihring had told the district court that he willingly waived his right to testify. But Gihring maintains that he wished to testify even during trial to the S.W. charges, but that his counsel strongly advised against it; so when the defense later rested, Gihring affirmed he did not wish to testify. But Gihring's statement at the close of evidence that he did not want to testify was after the district court had denied his motion to sever and after all the evidence had been presented relating to both S.W. and C.S. Gihring maintains that he did not wish to testify about C.S.'s claims and was told that if he took the stand, it would be difficult to limit his testimony to only S.W.'s claims. He thus decided not to testify at all, crippling the presentation of his consent defense to S.W.'s charges.

18

Second, the district court found no prejudice because Gihring's testimony was unnecessary—Jones had testified at trial that Gihring asked for S.W.'s consent and she agreed to have sex. True, Jones testified that "[Gihring] said that he tapped her on the shoulder, she might have been laying down or sleeping or wherever she was in the sleeping dorm, and I asked what had gone on and he said do you want to have sex with me and she said yes." Yet this scant testimony was from one of Gihring's fraternity brothers and was merely a brief mention in five days' worth of testimony. And at the time the court decided the motion to sever, it was foreseeable that the State would object to Jones' testimony as hearsay, causing his testimony to be excluded.

Gihring was required to proffer all the evidence he would present to the court at an evidentiary hearing in his K.S.A. 60-1507 motion. See *Noyce v. State*, 310 Kan. 394, 398, 447 P.3d 355 (2019) (holding movant bears burden of establishing that evidentiary hearing is warranted and must set forth an evidentiary basis to support his contentions or a basis must be evident from the record). Gihring did so here. Gihring proffered a great deal under seal, including that he would have testified that he tapped S.W. on the shoulder to ask her if she wanted to have sex with him, and after a brief conversation she consented. In short, he would have testified that S.W. was conscious before he initiated sex with her.

Had Gihring taken the stand, he could have testified that he was present at Pillsbury Crossing with S.W. and Farquhar; that he had seen S.W.'s quick consent to sexual intercourse with Farquhar; that Farquhar was Gihring's fraternity brother whom S.W. had just met that afternoon; that later that evening at the fraternity house Gihring had awakened S.W. and asked for her consent; that S.W. had consented to sexual intercourse with him that evening before he began having sex with her; and that because of S.W.'s sexual conduct that Gihring had seen earlier that day, he believed her consent to be valid. We cannot agree that Jones' testimony was sufficient to present the consent defense as thoroughly and as compellingly as Gihring would have presented it.

"A defendant is entitled to present his or her theory of defense." *State v. Maestas*, 298 Kan. 765, Syl. ¶ 8, 316 P.3d 724 (2014). The exclusion of evidence integral to a defendant's theory violates his or her fundamental right to a fair trial. 298 Kan. 765, Syl. ¶ 8. Insufficient evidence supports the district court's conclusion that Jones' testimony, combined with the other evidence, was good enough to fully and fairly establish Gihring's defense related to S.W.'s alleged unconsciousness. "'Substantial competent evidence is legal and relevant evidence a reasonable person could accept to support a conclusion.'" *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015) (quoting *State v. Bird*, 298 Kan. 393, 399, 312 P.3d 1265 [2013]). The district court's ruling ignores the heart of Gihring's defense and the evidence he wished to use to support it, which ties back into the first issue addressed above. Had the district court understood Gihring's defense, it may have ruled differently on the motion to sever. Gihring's trial counsel's litigation of the motion to sever, which impacted the district court's ruling, may have infringed on Gihring's right to fully present his defense, thus prejudicing him. See *Howell*, 223 Kan. at 284. Substantial issues of fact remain that must be resolved before it can be determined whether Gihring received ineffective assistance of trial counsel. See *Bellamy v. State*, 285 Kan. 346, 357, 172 P.3d 10 (2007). We thus remand for an evidentiary hearing on this issue.

D. *Cumulative Error Claim is Moot*

Lastly, Gihring argues that cumulative errors by his trial counsel require a remand for an evidentiary hearing. Because we have decided to remand based on the issues above, this issue is moot.

Reversed and remanded with directions.